MILTON H. BUTLER v. CITY OF DETROIT AND ROBERT E. ROBERTS, RECEIVER OF TAXES.

*Detroit Public Works Act—Paving assessments—Extension of contract.*

The Public Works Act of Detroit requires proposed public improvements to be submitted to the Board of Public Works for estimates and recommendations. *Held* that bids for paving contracts could not properly be invited until such reference and report.

The constitutional requirement that the title of an act must express its purpose, is not violated by a provision in an act "to establish a Board of Public Works" whereby proposed public improvements must be referred to such Board before the common council can carry them out; nor does such a provision unduly limit the legislative authority of the council.

Local legislative authority is not infringed by having boards or other executive servants to do, under proper conditions, what is not legislative work.

Under the charter of Detroit a paving contract cannot be extended unless work has been actually begun upon it in good faith.

An injunction against the sale of property on a paving assessment was allowed where the common council advertised for bids before the proposed improvement had been referred, as required by law, to the Board of Public Works, and because the contract had been extended in violation of the charter, before any work had been done.

Appeal from the Superior Court of Detroit. Submitted April 27. Decided June 9.

INJUNCTION to restrain tax-sale. Bill dismissed. Complainant appeals.

*Geo. H. Prentis* and *D. C. Holbrook* for complainant.

City Counselor *F. A. Baker* for defendant.

CAMPBELL, J.  The bill in this case was filed to restrain the sale of certain lots of complainant on Michigan avenue, in the city of Detroit, for an assessment for repaving that avenue.  The case is so presented as to raise only three questions, and while it is claimed other grounds of illegality exist, we are not called on to consider them.  For the purposes of the present suit, therefore, the parties assume that the common council had power to order the repaving, and has only failed to provide for it in a legal manner.  The inquiry is narrowed very materially.

The three objections relied on are, *first*, that the council took measures in advance of any proper reference to and report from the Board of Public Works; *second*, that the contract was let before any assessment was provided for; and *third*, that the contract had expired of its own original limitation before any work was done under it, and was extended before any work was done.

The course of procedure, as bearing on the first of these objections, was as follows: On the 2d of June, 1876, a resolution was passed directing the Board of Public Works to prepare and submit the proper resolution for repaving Michigan avenue from Woodward avenue to the west line of Trumbull avenue.  On the 20th day of June, 1876, the board made a report, which expressed no opinion except that if the street was repaved it should be done as far as Thirteen-and-a-half street, and which stated further that inasmuch as the resolution was imperative the board abstained from acting on various remonstrances, and returned them without recommendation.  Resolutions were enclosed which provided for paving, in separate districts, from Woodward avenue to the west line of the Forsyth farm, with cedar blocks fifty-four feet wide in the center, and with stone six feet wide on either side; and three other districts with pavements of forty-four and thirty-four feet wide of cedar in the

center, and six feet on either side of stone. No reference was made in these resolutions to the street railway tracks, which it appears were to be paved by the railway company, with material furnished by the city.

These resolutions declared the action of the council to be taken under the clause in the city charter allowing $200,000 to be appropriated annually without the petition of a majority of property holders. They also directed the city engineer to report to the Board of Public Works the quantity of work, showing the amount of cross-walks and of paving, etc., in the intersections of streets and alleys, and required the board, when they received the engineer's report, to advertise for proposals. A further resolution declared that payment should be according to the charter amendment of 1871, permitting the issue of bonds to the extent of three-fourths of the expense.

June 23d these resolutions were taken up and amended so as to make the whole pavement wood instead of stone, and on the 27th they were passed as amended.

There is nothing in the record to show what was done by the city engineer, but no point is made on it. On the 27th of July the board advertised for proposals for the work to be done, excluding the quantities between the rails of the railway tracks, and calling for bids on separate estimates by square yards of paving and feet of curbs, and cross-walks, of all wood, and of part wood and part stone, and for material for paving the railway track.

On August 4th the bids were reported to the common council, and it was subsequently determined by the council that Edgar S. De Golyer was lowest bidder; and the board was ordered to contract with him. This contract was reported and confirmed August 25th. It required the work to be begun September 4th and completed November 15th.

By section 12 of the Public Works Act (3 Sess. L. 1873, p. 180), it is provided that "When any public improvement (except the opening of public streets), or public work is proposed, the common council shall,

before proceeding with the same, refer the matter to said Board of Public Works, and the board last named shall forthwith proceed to examine the same, and shall, as soon as practicable, report thereon to the common council, giving detailed estimates of the costs of such works or improvements (if any cost there will be), and shall make such recommendation as said Board of Public Works shall deem expedient."

There is nothing which has been pointed out to us, or which we have discovered, that makes this section inapplicable to paving. The two constitutional objections that the section is not within the title of the act, and that it unduly limits the power of the council, do not strike us as correct. An act to establish a Board of Public Works must necessarily define what the board is to do, and must in some way indicate its relations with the city government. The obvious purpose of the act was to place public improvements under the oversight of a responsible board, not independent of the council but auxiliary to it. There is nothing inconsistent with local legislation in having either boards or other executive servants to do under proper conditions what is in no sense legislative work. In the present instance the action of the board is not final, but merely designed to enable the council to act understandingly. There is surely nothing unlawful in this.

But it is claimed that if valid, this section is only directory, and not so binding that disobedience to it is any objection to the action disregarding it. The plain purpose of the section is to prevent the council from going forward with any work involving the expenditure of money without first considering both its expediency and its probable cost. It is not likely that the council can have adequate knowledge of all the streets and their condition, or of the wishes of the persons living on them. If this section is not in force, there is nothing to prevent the council from at once, and without any further publicity than is given by holding over a resolution a few days, committing the city and subjecting lot

owners to the expense of a paving job that may benefit no one but contractors, and that may be ruinous. If they can take no definite steps and expend no money until they have had laid before them the views of a board especially familiar with the subject, and a reliable estimate of the extent of the burdens to be created, each one voting upon the scheme will do it with his eyes open, and can have no excuse in ignorance or mistake; and the public will know what merits there are in the action, and who is responsible for it. The paving contracts are the most important of the current undertakings, and the guards against fraud and abuse will not amount to much if these are not protected.

The suggestion that the council may refuse to confirm the contracts does not meet the evil. It is not to be expected that after all the preliminaries have been completed and bids received, any step will usually be taken to recede on grounds of impolicy. And the section referred to recognizes this danger by requiring the whole merits to be looked into before the council is committed to any measure, or has spent any money on the plan.

In the present case the board felt itself precluded from expressing any opinion upon the policy of the repaving. If a street already paved is to be repaved at public and private charge, there should be properly some plain occasion for it. We do not now consider any question of power which might arise. But the Legislature never meant to allow this without knowledge and reflection. Here the council had no knowledge on the subject until the board had made its estimates on the engineer's figures, and had incurred all the expenses of advertising for bids, and reported the bids. It seems to us that the action of the council in directing the invitation of bids should not have been taken without a previous report and estimates.

The objection that no contract can be let until after

an assessment has been levied, as provided for in section 11 of the chapter on taxation and finance, is removed by a subsequent amendment of section 38 of the same chapter, which authorizes contracts for paving to be made beforehand.    Act 270, 2 Sess. Laws of 1873, p. 1279.    As this was passed in immediate connection with the Public Works Act, it is probable that the preliminary examination and report by that body were regarded as securing the same kind of protection against abuse.

There is more force to the objection to the contract as inoperative from default.    The statute is express that every paving contract shall require the work to be commenced and completed within six months next preceding the first day of December in the year of the making of the contract.    Chapter 8, § 8.    It also authorizes extensions of time for completion of any such contract "where the work under the same has been begun in good faith, but not fully completed within the time."    Id.

This section limits the amount of expenditure for each year, and these restrictions are evidently designed to prevent any excess of liability in any one year beyond the fixed amount.    The Constitution requires the taxing power of cities to be limited, and under the charter, although paving is to be paid for by special assessments, yet it may be required up to $200,000 without consulting land owners, and the faith and credit of the city may be pledged for three-fourths of the cost.    Chapter 8, § 46.    It is contrary to the policy of the charter to allow contractors, who have done nothing towards fulfilling their contracts, to get indefinite extensions.    It would open a wide door to corruption, and create great inconvenience to property-holders.

Here the contract made it necessary to begin on the 4th of September, and finish by the 15th of November, 1876.    An extension was made on the 6th of October, 1876, until the following August.    Nothing had been done, and more than a month remained of the original time.

The excuse given is that an injunction had been granted against making an assessment, and that although it had been dissolved as to the contractor's paving, it created such equities as to render an extension proper. This might be true, if any such power existed. But the validity of the proceedings was as easily determinable then as afterwards, and if it was thought best to do no more paving until a legal decision was reached, the natural method was to drop the contract and if afterwards found desirable to let the work over again. All of the subsequent action was had under the distinct protest of the municipal advisers and the Board of Public Works, and all equities are against it. But we have nothing to do with these equities one way or the other. We think the contract expired in November, 1876.

Some other questions were waived, and require no reference.

We think complainant is entitled to an injunction against the sale of his lots. The decree below should be reversed, and a decree granted accordingly with costs of both courts.

The other Justices concurred.