SNOUFFER & FORD, Appellants, v. THE CITY OF TIPTON, Appellee.

**Municipal corporations:** PUBLIC IMPROVEMENT: BREACH OF CONTRACT:
1 *Quantum meruit.* Quantum meruit will not lie to compel either a city or a property owner to pay for a street improvement which is not in substantial compliance with the agreement of the contractor for its construction.

**Same:** OFFER TO REPAIR THE WORK: *Res judicata.* The right of a
2 contractor to recover the reasonable value of a public improvement where there has been a failure of substantial compliance with the contract, which provided for payment in assessment certificates, depends upon some failure on the part of the city to perform its part of the contract.

In this action the contractor is relying upon a refusal of the city to permit him to repair defects in the work thus preventing him from complying with his contract and eventually securing the assessment certificates. But it appears that in a former action to restrain the collection of assessments for the work he had an opportunity to offer to reconstruct and repair the same but failed to do so.

*Held,* that his right to repair and reconstruct was adjudicated in that action and the offer now comes too late. Also that his right to repair must be governed by the original contract, and that it gave him no right in this respect except during the life of the contract.

**Same:** ESTOPPEL. It is also held that as plaintiffs in the former ac-
3 tion had an opportunity to offer to reconstruct and remedy defects in the work but elected rather to rely on the contention that the work was done according to contract, they are estopped from contending in this action for the reasonable value of the work that they be now given an opportunity to reconstruct and remedy the defects.

*Appeal from Cedar District Court.*—HON. MILO P. SMITH, Judge.

Friday, January 13, 1911.

Suit in equity to compel the city to make an assessment of the cost of a certain improvement against abutting property owners, for a writ of mandamus, and for judgment for the value of the improvement against the city. The case was tried to the court, resulting in a decree dismissing plaintiff's petition, and plaintiff appeals.—*Affirmed.*

*Redmond & Stewart* and *R. R. Leech,* for appellant.

*C. O. Boling* and *France & Rowell,* for appellee.

Deemer, J.—The controversy out of which this action arose has been prolonged and the history of the case is unique. Plaintiffs are contractors and as such they secured a contract with the defendant city for paving certain streets in said city, the costs thereof, except for street intersections, to be taxed up against owners of abutting property, and the contractors agreed to receive assessment certificates in full compensation for their work and materials. By the terms of this contract, the work was to have been commenced on or before May 1, and completed on or before July 1, 1903, and as will hereinafter be noted certain penalties were affixed for failure to complete within the time named. The work was not completed within the time fixed, but sometime thereafter the contractors, claiming to have completed the work, an assessment was levied upon abutting property owners according to the report of the city engineer. Certain of these property owners then brought action against the city, the contractors, and various other parties, to cancel these assessments and to enjoin the issuance of assessment certificates. To that action, Snouffer & Ford appeared, as did the city. Snouffer & Ford, plaintiffs herein, filed an answer to the petition of the property owners in which they

denied that they had failed to complete the work according to contract, and denied any fraud on the part of the city or its officials in accepting the work. They also filed a cross-petition against the city, which was a codefendant with them, in which they distinctly alleged that they had completed the work according to contract and averred that the city had accepted the same, and they asked that the city be required to issue certificates according to the terms of the contract. Defendant city admitted the fraud and noncompliance with contract charged in the plaintiffs' petition, denied that any assessment had been levied, and asserted that it was opposed to accepting the work until completed according to contract. In answer to the cross-petition of Snouffer & Ford, it denied that it had ever accepted or approved the work, denied that the work had been done according to the terms of the contract, and averred that the work was inferior both in material and workmanship. On these issues the case was tried, resulting in a decree in the lower court for the contractors. Upon appeal to this court, that judgment and decree were reversed. See *Wingert v. City of Tipton,* 134 Iowa, 97.

That decision held, in effect, that Snouffer & Ford had not complied with the terms of their contract, that there had been very material and substantial departures therefrom, and that there had been no acceptance of the work by the city council or by any officer authorized by it to act. The right of assessing abutting property owners and to issue assessment certificates was denied, and a decree of permanent injunction was issued as prayed. Reference is made to the opinion for a better understanding of the issues and of the facts disclosed upon the trial. Thereafter, instead of attempting compliance with its contract, plaintiffs brought suit directly against some of the abutting property owners, in which they sought to recover judgment for the value of pavement laid in front of their property, claiming that they had offered to cure

all defects which might be pointed out by the city, and asking judgment for the reasonable value of the improvement against each owner of property abutting thereon. In this' action they were defeated, and upon appeal to this court the judgment was affirmed. See 139 Iowa, 466.

Thereafter, and while the last-named action was pending in this court, the present action was commenced. It was brought shortly after the decision of the first case mentioned and proceeds upon two theories: First, that plaintiffs are entitled to recover from the city the reasonable value of the pavement as upon *quantum meruit;* and, second, that they are entitled to recover the value of the work and materials from the city, for the reason that the city refused to point out the defects which it claimed existed in the pavement that plaintiffs might remedy them, which it offered to do, thus depriving the city of the power and authority to assess the cost of the improvement against abutting property owners and to issue assessment certificates to plaintiffs, as it had agreed to do. Plaintiffs assume the attitude now of having failed to comply with the terms of its contract, but they still insist upon their right to recover either on *quantum meruit* or because the city failed to point out defects that they might remedy them, and thus pave the way to the making of valid assessments.

I.    That an ordinary action of *quantum meruit* will not lie in such' cases, where the contractor has failed to substantially comply with the terms of his contract, is well settled by authority. *Crawford v. Mason,* 123 Iowa, 301; *Reock v. Newark,* 33 N. J. Law, 129; Elliott's Roads & Streets (2d Ed.) section 602; Page & Jones on Taxation by Assessment, section 18, and cases cited, among which are *O'Brien v. Wheelock,* 184 U. S. 450 (22 Sup. Ct. 354, 46 L. Ed. 636); *City v. Harley,* 79 Mich. 238 (44 N. W. 603); *City v. Hope* 33 Ky. Law Rep. 426 (110 S. W. 272); *Municipal Co. v. Gales,* 130 Mo. App. 552

1. MUNICIPAL CORPORATIONS: public improvement: breach of contract: *quantum merit.*

(109 S. W. 85); *Heman v. Larkin,* 108 Mo. App. 392 (83 S. W. 1019). See, also, *Carter v. Cemansky,* 126 Iowa, 506. There is nothing in sections 982-984 and 986 which changes this rule. *Snouffer v. Grove,* 139 Iowa, 466; *Allen v. City,* 132 Fed. 209 (65 C. C. A. 641).

The reason for this is that assessments are not based upon contract; but are purely *in invitum,* imposed in virtue of sovereign power. It is a forced contribution and can only be sustained where the law providing for the assessment is followed. The irregularities, defects, etc., referred to in section 986 of the Code are those of the officers of the city relative to the proceedings which do not affect the substantial rights of the parties. Neither the city nor the property owners can be forced to pay for a pavement which fails to comply substantially with the contract made for its construction.

II. Relying upon the doctrine of *Ft. Dodge Co. v. Ft. Dodge,* 115 Iowa, 568, and other like cases, plaintiff claims a right to recover from the city. These cases proceed on the theory that the city has done or failed to do something which it should or should not have done, to comply with its contract, as, for example, in the *Ft. Dodge* case to take the necessary steps to levy any assessment and to issue assessment certificates, as it undertook to do in its contract with the contractors. In order to bring this action within that rule, it must be shown in the first instance that the city has in some manner failed in its duty and that for this reason valid certificates of assessment could not be issued. Recognizing this rule, plaintiffs contend that after the decision of the original case of *Wingert v. City et al.,* they offered to repair any defects in the pavement as constructed which the city might point out, that the city failed and neglected to do this, and in this way prevented plaintiff from complying with its contract and eventually securing a reassessment and the assessment cer-

2. SAME: offer to repair the work: *res judicata.*

tificates to which it was entitled. This presents the pivotal question in the case, as we view it, and to this we shall direct our attention.

Defendant denies that any adequate demand was made upon it; says that the demand, if any was made, was too late and ineffective; that when demand was made, it had no power to comply therewith, and further pleads an estoppel and an adjudication in virtue of the former decisions. Down until the time of the decision of this court in the first case plaintiffs were insisting without qualification, that they had fully complied with the terms of the contract on their part to be performed, and they did not, in their cross-petition filed against the city in that case, ask that the claimed defects be pointed out, aver a readiness to cure and remedy them, or ask a judgment for the value of the materials furnished and labor performed. They knew from the time of the filing of the petition in the *Wingert* case that many defects were claimed and these were pointed out by the petition. Instead of offering to cure the defects, they elected to stand upon the proposition that there were no defects and to take the judgment of the court on that issue. The cause being in equity, they might then have made demand upon the city to point out the defects and have remedied them before putting the parties to the trouble and expense of long litigation. It was only when defeated in that case that they offered to remedy any defects and their offer then was:

We, the undersigned, having finished, as we believe, the pavement under our contract with the city of Tipton, Iowa, for the construction of pavement on Fourth Street from the east line of Cedar Street to the east curb line of East Street, on Meridian Street from the north line of Fourth Street to the south line of Fifth Street, in your city aforesaid, do hereby respectfully ask your honorable body to order an assessment and issue certificates in payment for same to us, in city warrants as contract provides; and that same may be expeditiously done, we hereby,

notify you that we are ready and willing, and do hereby offer, to remedy any defects and reconstruct any portion of said pavement at our own expense, which your honorable body may point out or designate, and· to complete all of said work up to the substantial requirement of our said contract. That the matters herein referred to may be speedly accomplished and performed, we request early action hereon, so that we may be advised and act accordingly. Dated this 1st day of October, 1906. Snouffer & Ford, by J. J. Snouffer, Jr.

This offer was made six days after the original opinion was filed in the *Wingert* case. It was made, as will be observed, on October 1, 1906. Unless there be something in the original contract which gave them the right to reconstruct or remedy the defects, it is manifest that they are concluded by the adjudication in the original *Wingert* case. Not only is this the rule, but we are also of opinion that unless there be something in the contract authorizing it, plaintiff can not, after having insisted that the work was done according to contract and turned the same over to the city in compliance with that contract and after being defeated upon the issue of performance, then come in and claim that they have the right to remedy defects or reconstruct, unless there be something in the contract itself which permits it, and it may be that the city council had no authority to extend the time for the completion of the contract. See Code, sections 813 and 815, as construed in *Osburn v. Lyons*, 104 Iowa, 160. Upon the latter proposition, we make no pronouncement at this time. Going now to the contract under which the work was done, and which it is claimed gave plaintiffs the right to reconstruct, we find the following to be the only relevant provisions:

(13) If the contractor shall abandon his work under this contract, or if at any time the engineer shall be of the opinion and shall so certify to the committee that the work or any part thereof is unnecessarily delayed, or that the contractor is wilfully violating any of the conditions

of the contract, or executing the same in bad faith, then at the option of the committee, the contract may be declared. null and void, the security may be forfeited, and the materials delivered at and built into the work shall be the property of the city. The committee may then at its option proceed to complete the work, either by days' work or by contract, and any and all damages and increased costs of the work of the city will be deducted from the funds retained by the city, and from any sum realized from the value of the materials reverting to the city, and the city through its committee shall have the right to bring suit against the contractor or any of his sureties for any and all damages and increased costs.

(14) The successful bidder must sign the contract for the work to be done by him within six (6) days after the contract is awarded to him and he has been notified thereof, and must begin work on or before May 1, A. D. 1903. He shall proceed with the work, prosecuting it with due diligence from day to day, and complete the same on or before July 1, A. D. 1903. . . .

(17) No charge made by the contractor for any delays or hindrance from any cause during the progress of any portion of the work embraced in his contract will be allowed. If the delay be caused by any act or neglect of the city, then he will be entitled to an extension of the time allowed for the completion of the work sufficient to compensate for the delay, to be determined by the committee, provided the contractor shall give the committee immediate notice of the cause in writing. If the contractor fails to complete the work at the time specified, unless caused by unavoidable or accidental delays, or by express agreement with the committee, he shall forfeit to the city, as liquidated damages, the sum of ten ($10) dollars per day for each and every day which the completion of the work is delayed beyond the time fixed by the contract. . . .

(20) All materials furnished and work done will be inspected by the engineer, and if not in accordance with these specifications and the contract, they will be rejected and shall be immediately removed, and other work done and materials furnished in accordance therewith. If the contractor refuses to remove the work and materials as

above, when ordered, then the engineer shall have the right and authority to stop the contractor and his work at once and to supply men and materials to remove and correct the faulty work and materials at the cost and expense of the contractor; such expense to be deducted from any moneys then due, or to become due, to the contractor from the city. The contractor shall furnish all necessary facilities should it be advisable to make any examination of the work already completed. If any be found defective, in any respect, he shall defray the expense of such examination and of satisfactory reconstruction. If all be found satisfactory, such expense will be paid by the city. The engineer shall have the right to reject, at any time previous to the final settlement with the contractor, any work or materials which may be found to be faulty.

Inspectors may be appointed by the committee, whose duty it shall be to point out to the contractor any neglect or disregard of these specifications, but the right of final acceptance or condemnation shall not be affected by such inspection. . .. .

(21) . . . The contractor shall enter into a bond with the city, guaranteed by a corporate surety authorized to do business in Iowa, in an amount equal to one-half of the contract price, conditioned upon the full and faithful performance of the contract in accordance with its terms and with the plans, general specifications, and detailed specifications attached to and made a part of said contract, . . . conditioned further upon the keeping of the pavement in perfect repair and condition for the period of two (2) years from the acceptance of the work. Said bond to be approved by the mayor of the city and retained by him, as such officer until the expiration of the guarantee period.

(22) No estimates will be made on any part of the work not completed, nor any materials, except in completed work.

A final estimate of all the work done and materials delivered according to the contract and these specifications will be made immediately after the engineer has satisfied himself by tests, examinations, or otherwise that the work has been and is finally and fully completed in perfect

accordance with the contract and specifications, and the contractor will be paid as hereinafter provided.

(23) Payments will be made on the completion of the contract and the acceptance of the work by the city council in assessment certificates and warrants on the improvement fund, as provided by the laws of Iowa and the ordinances of the city, as soon as such certificates may be legally issued. . . .

All work will be done under the general supervision of the committee, and in accordance with stakes set by the engineer. He shall set line and grade stakes for the curb, but all other grades shall be taken from the curb elevations by the contractor.

These provisions are found either in the proposals for bids or in the specifications, each of which was made part of the contract.

In the contract itself is found the following:

Said party of the second part hereby agrees to commence said work on or before the 1st day of May, 1903, and to have the same fully and finally completed on or before the 1st day of July, 1903. Said party of the second part and his bondsmen hereby agree to keep said pavement in good repair for the period of two years after completion thereof, and it is agreed and understood that in case the party of the second part shall fail to enter upon the work at the time fixed so to do or to do and to perform and complete said work as herein stated and within the time specified, they shall forfeit and pay the sum of ten dollars ($10) to the party of the first part for each day they are so in default as liquidated damages, and in case they shall be so in default for thirty days, then, without impairing the right of the party of the first part to such damages, the party of the first part may at once take possession of the said work and employ sufficient force, under a competent foreman, to complete the work within the time specified, or as soon as may be, and the cost of such work shall be paid by the party of the second part and the cost of said work together with said damages shall be a valid claim on behalf of the city of Tipton against the party of the second part and the sureties on their bond.

The bond contained this provision:

Now, if the said obligor shall faithfully perform its part of the contract hereto annexed and referred to above, according to the plans and specifications hereto annexed and referred to above, and shall properly complete said improvement within the time specified in said contract and specifications, and shall hold the city of Tipton harmless in case of accident or damage of any kind whatsoever during the construction of said street improvements, and shall keep said street improvement in good repair for a period of two (2) years from and after the completion thereof as above, without expense to the said city of Tipton, then this obligation to be void, otherwise to remain in full force and virtue.

That we may eliminate the matter of acceptance of the job by the city, we here refer to what is said on that matter in the original *Wingert* case. The contract was entered into on December 3, 1902, and the time for completion was fixed as July 1, 1903. Plaintiff assumes that, notwithstanding this limit as to time, it had the right at any time, when objection was made thereto, to reconstruct or remedy defects no matter how long it had been in default. We do not take this view of the contract. It seems to us that the only right of reconstruction given the contractor was during the life of the contract, that is, prior to July 1, 1903. Time was made the essence of the contract, and the bond guaranteed performance within the time so fixed. A penalty in the form of liquidated damages is also provided for in the contract and in the bond. It is difficult to see how the parties could have more effectively made time of the essence of the contract. We are constrained to hold that the offers to reconstruct or remedy defects must have been made during the life of the contract or not later, at least, than when the defects were pointed out, as they were in this case, when the original action was brought, or when the city responded to plaintiffs' cross-

petition filed in the original *Wingert* case. Surely it can not be said to have complied with its contract as to time for the completion of the work, and no waiver on the part of the city or the property owners is shown. Plaintiffs did not offer to reconstruct or repair until they were beaten on the issue tendered by them, that the work had been completed according to contract. This, as it seems to us, was not sufficient, and we find no warrant for it in the contract. In support of this proposition: *Kelso v. Gillette,* 136 Cal. 603 (69 Pac. 296); *Schibel v. Merrill,* 185 Mo. 534 (83 S. W. 1069); *McQuiddy v. Brannock,* 70 Mo. App. 535; *Butler v. Detroit,* 43 Mich. 552 (5 N. W. 1078); *Merine v. Asphalt Co.,* 125 Mo. App. 625 (103 S. W. 508).

III. Moreover, there is another rule applicable to the case which we regard quite controlling. It will be remembered that when the question of compliance with

3. Same: estoppel.

the contract was challenged by the property owners and the city in the original *Wingert* case, plaintiff, instead of admitting the defects and offering to remedy them, asserted that there were no defects whatever, or, at least, none sufficient to defeat assessments for the work. On this issue it put the city and the property owners to the trouble and expense of a trial. As a result of that trial, plaintiffs were defeated on the ground that they had not complied with their contract, and that the defects pointed out by the property owners and the city were serious and substantial. For these reasons the assessments were defeated. After this defeat, plaintiff goes to the city council with the offer heretofore set out and, impliedly admitting the defects, offers to remedy them, if pointed out by the city.

In the law of estoppel, we find this well-settled principle. A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the

prejudice of the adverse party. *Kirkhart v. Roberts,* 123 Iowa, 137; *Crawford v. Nolan,* 70 Iowa, 97; *McCormick v. McCormick,* 120 Iowa, 593; *Oliver v. Monona Co.,* 117 Iowa, 43; *Zalesky v. Ins. Co.,* 114 Iowa, 516; *Shropshire v. Ryan,* 111 Iowa, 677; *Kelly v. Ins. Co.,* 82 Iowa, 137. Again it was entirely competent and proper for plaintiffs herein to have made the offer in the original *Wingert* case, when the defects were pointed out to them, which they now make, and to ask that they be permitted to make them and then have the assessments made and confirmed. That action was in equity and plaintiffs herein, who were defendants in that action, not only denied the defects pointed out by the property owners in their petition, but they also filed a cross-petition against the city in which they alleged completion of the work according to the contract and asked that the city be ordered to make assessments and issue assessment certificates, as provided in the contract. In answer, the city denied that the work had been completed according to contract and averred that the work was faulty and the material defective. Plaintiffs did not then offer to reconstruct or remedy the defects, as it now claims it had the right at some time to do, but insisted that the contract had been fully performed and the work completed. Here, then, is an estoppel on two grounds: First, as already suggested, because plaintiff persistently adhered to its claim that the work was done according to contract, putting the city and the property owners to the expense of defending; and, second, because plaintiff did not present its entire claim in the original action and then offer to do what it now says it at all times had the right to do. This last proposition is ruled by *Allen v. Davenport,* 132 Fed. 209 (65 C. C. A. 641).

These doctrines are to be distinguished from what is known as election of remedies. They are all bottomed, it is true, upon estoppel, but an election of remedies upon a given state of facts is quite different from an estoppel,

growing out of the assertion at one time of a given state of facts and, when unsuccessful, asserting at a subsequent time another and entirely different and inconsistent state of facts. If the latter were permissible, there would be no end of litigation, for with every defeat a party might change his ground, mend his hold, and proceed indefinitely. Some courts have said that to take advantage of this rule the party to be estopped must be successful on his original claim. This is true in some cases, but this rule is not applicable here, for the reason that plaintiffs, upon objection being made, were required, under their version of the contract, to reconstruct or remedy the defects. They had an option to do that or to insist that the contract had been completed. Here they did the latter. They elected as between two rights, stood their ground upon a claimed performance, and put their opponents to the trouble and expense of litigation. After that no new law intervening, they say: Well, we were found to be wrong in our previous claim, and we now ask to be permitted to do what we should have done before this litigation arose. This is a clear election of rights, as distinguished from an election of remedies, and under the weight of authority constitutes an estoppel upon the plaintiffs. So that we are constrained to hold that plaintiffs had no right, under their contract, to reconstruct or remedy defects after the expiration of their contract or, at least, not after their work was challenged and decreed to be defective, and that they are estopped from maintaining the present action by reason of the proceedings in the former suits. See as sustaining this view: *Crawford v. Nolan,* 70 Iowa, 97; *Citizens' Bank v. Dows,* 68 Iowa, 460; *McLean v. Ficke,* 94 Iowa, 283; *Iowa Co. v. Herrick,* 126 Iowa, 721; *Thyssen v. Ice Co.,* 134 Iowa, 749; *Ingold v. Symonds,* 134 Iowa, 206.

The decree of the trial court is correct, and it is *affirmed.*