# IN THE SUPREME COURT OF IOWA

No. 22–0303

Submitted December 13, 2023—Filed January 26, 2024

**BRADLEY A. CHICOINE, D.C.; DR. BRADLEY A. CHICOINE, D.C., P.C.; MARK A. NILES, D.C.; NILES CHIROPRACTIC, INC.;** and **ROD R. REBARCAK, D.C.,** on behalf of themselves and those like situated,

Appellants,

and

BEN WINECOFF; STEVEN A. MUELLER, D.C.; BRADLEY J. BROWN, D.C.; BROWN CHIROPRACTIC, P.C.; MARK A. KRUSE, D.C.; MARK A. KRUSE, D.C., P.C.; KEVIN D. MILLER, D.C.; and LARRY E. PHIPPS, on behalf of themselves and those like situated,

Plaintiffs,

vs.

**WELLMARK, INC.** d/b/a **WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA** and **WELLMARK HEALTH PLAN OF IOWA, INC.,**

Appellees.

---

Appeal from the Iowa District Court for Polk County, Sarah E. Crane, Business Specialty Court Judge.

Chiropractors appeal the district court ruling denying their motion for class certification. **AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. Mansfield, J., took no part in the consideration or decision of the case.

Glenn L. Norris (argued) of Hawkins & Norris, P.C., Des Moines; Steven P. Wandro, Kara M. Simons, and Ben Arato of Wandro & Associates, P.C., Des Moines; and Harley C. Erbe of Erbe Law Firm, Des Moines, for appellants.

Zachary D. Holmstead (argued), Daniel E. Laytin, and Alyssa C. Kalisky of Kirkland & Ellis LLP, Chicago, Illinois, and Benjamin P. Roach of Nyemaster, Goode, P.C., Des Moines, for appellees.

**WATERMAN, Justice.**

In this appeal, we must decide whether the district court abused its broad discretion in denying the plaintiffs' motion for class certification. The plaintiffs, three chiropractors, allege Wellmark[1] violated the Iowa Competition Law, Iowa Code chapter 553 (2015), through "Administrative Services Agreements" with over 400 employers that self-fund healthcare benefits for their employees. The plaintiffs claim that but for these agreements, the self-funded employers would compete independently for chiropractic services, resulting in higher profits for chiropractors. The plaintiffs filed a motion to certify a class of approximately 1,300 Iowa chiropractors. Wellmark resisted class certification on several grounds. The district court ultimately denied certification on the ground that individual issues predominate over any common question on the threshold liability issue of antitrust injury. The plaintiffs appealed, and we retained the case.

On our review, we conclude that the district court did not abuse its broad discretion in denying the plaintiffs' motion for class certification. To establish an antitrust injury, the plaintiffs must prove that they would have been better off without the challenged agreements as numerous self-funded employers would then theoretically compete with one another for chiropractic services, driving up rates paid for chiropractic services. The plaintiffs offered no expert testimony or model to address that threshold issue on a classwide basis. The district court carefully reviewed the extensive evidentiary record to determine that too many individual local variables precluded an efficient classwide determination of antitrust injury, as the plaintiffs ultimately conceded. We agree with that

---

[1]The plaintiffs sued Wellmark, Inc.—doing business as Wellmark Blue Cross and Blue Shield of Iowa—and Wellmark Health Plan of Iowa, Inc., that we collectively refer to as "Wellmark" in this opinion.

determination. The district court also correctly applied judicial estoppel to preclude the plaintiffs from belatedly reviving a theory they previously disavowed to avoid a motion to dismiss asserting the single entity defense—that Wellmark's operation of the agreements illegally underpaid chiropractors. Finding no abuse of discretion, we affirm.

## I. Background Facts and Proceedings.

This is the sixth appeal we have adjudicated in this complex litigation spanning over a decade.[2] In this round, the named plaintiffs are Bradley A. Chicoine, D.C., Mark A. Niles, D.C., and Rod R. Rebarcak, D.C., and their respective business entities providing chiropractic services in several Iowa cities. Dr. Chicoine practices in Sioux City, Dr. Niles in Tipton, and Dr. Rebarcak in Ames. We will refer to these plaintiffs collectively as "Chicoine."

Chicoine filed this putative class action against Wellmark, Iowa's largest health insurer and claims administrator. Chicoine alleges that Wellmark has violated Iowa antitrust laws through its Administrative Service Agreements with over 400 Iowa employers who self-fund healthcare benefits for their employees. The self-funded employers pay their employees' healthcare costs but hire Wellmark to administer their healthcare plans. The employers pay Wellmark administrative and network access fees, allowing access to Wellmark's provider networks paying healthcare practitioners under rates negotiated by Wellmark. The self-funded employers contracting with Wellmark range in size from Iowa's largest private employers—Hy-Vee and John Deere—to numerous small businesses who lack the staff or expertise to administer employee healthcare

---

[2]*Chicoine v. Wellmark, Inc.*, 894 N.W.2d 454 (Iowa 2017); *Abbas v. Iowa Ins. Div.*, 893 N.W.2d 879 (Iowa 2017); *Wellmark, Inc. v. Iowa Dist. Ct.*, 890 N.W.2d 636, 638–42 (Iowa 2017) (summarizing prior opinions); *Mueller v. Wellmark, Inc.* (*Mueller II*), 861 N.W.2d 563 (Iowa 2015); *Mueller v. Wellmark, Inc.* (*Mueller I*), 818 N.W.2d 244 (Iowa 2012).

claims. Chicoine alleges that Wellmark conspired with the self-funded employers to unlawfully fix prices paid for chiropractic services.

Wellmark filed a motion to dismiss Chicoine's lawsuit, arguing Wellmark acted as the agent for the self-funded employers to administer their healthcare plans and, therefore, no conspiracy claim exists under the single entity doctrine (it takes two to conspire and a principal cannot be liable for conspiring with its agent as they are regarded as one actor).[3] The district court stated:

> It appears the plaintiffs agree that when Wellmark enters into and enforces the practitioner service agreements with health care providers, including chiropractors, they are administering the self-funded employers' plans and are acting as their agents. If plaintiffs' anti-trust argument was based solely upon Wellmark's enforcement of the practitioner service agreements, the court might agree dismissal under the single-entity doctrine would be appropriate.

Chicoine, to avoid dismissal, argued that the antitrust violation did not occur when Wellmark administered the agreements, but instead occurred earlier when entry into the agreements removed the self-funded employers from competing with one another—competition that would result in higher prices for chiropractors. In denying the motion to dismiss, the district court relied on that argument:

> In this case, however, the plaintiffs assert that the Iowa self-funded employers would, absent their contractual relationship with Wellmark, be price competitors. It is when the self-funded employers contract with Wellmark . . . that plaintiffs allege the horizontal price-fixing occurs. . . . Taken as true, the plaintiffs are arguing that the alleged illegal activity occurs when Wellmark and

---

[3]In the operative pleading, the third amendment petition, Chicoine alleges that Wellmark acts as the agent of the self-funded employers:

> In fact, the ERISA self-funded Iowa employers and the self-funded Iowa governmental employers entered into the form contracts with Wellmark which create an express agency relationship between Wellmark and the self-funded whereby Wellmark acts as agent for the self-fundeds (the principals) in relationships with Iowa health care providers such as the plaintiff chiropractors.

the self-funded employers enter into their contracts, and, thus, before Wellmark acts as the self-funded employers' agent.

This remained Chicoine's liability theory going forward.

Chicoine filed a motion for certification of a class of approximately 1,300 Iowa chiropractors defined as all licensed chiropractors "(1) who are citizens of the state of Iowa as of the date of filing of this petition (October 5, 2015) and/or (2) who have been citizens of Iowa at all times during their Iowa licensure as doctors of chiropractic after May 20, 2004." Chicoine sought class certification on the theory that but for these agreements, the self-funded employers would compete with one another to provide chiropractic care for their employees, resulting in higher profits for Iowa chiropractors. Wellmark resisted class certification on several grounds, but principally argued that Chicoine could not show common questions predominate over individual questions on the threshold liability element of antitrust injury.

The district court recognized that to establish an antitrust injury, the plaintiff must identify the defendant's anticompetitive practice and show how "the plaintiff . . . is in a 'worse position' as a consequence of the defendant's conduct." (Quoting *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 62–63 (2d Cir. 2019).) In seeking class certification, Chicoine argued this theory of antitrust injury:

> Absent the Administrative Services Agreements, the Iowa self-fundeds would have to negotiate such [rates] directly with the Plaintiff chiropractors. . . . Given that each of the Iowa self-fundeds on its own does not control a substantial amount of the health insurance market in Iowa, Plaintiff chiropractors would be able to negotiate more favorable rates and coverage.

As the district court noted, to ascertain whether the chiropractors would be better off in "[t]he 'but-for' world would require individualized consideration of how particular self-funded employers, whose employees are patients of

particular chiropractors, would act in the absence of the challenged Administrative Services Agreements." Chicoine offered no expert testimony or model for proving this antitrust injury on a classwide basis.

Wellmark, by contrast, developed an extensive evidentiary record through experts that highlighted individual variables in determining whether individual chiropractors would be better or worse off without Wellmark's agreements with the self-funded employers. These variables include:

- Some employers would no longer self-fund their healthcare and would buy insurance from Wellmark, paying the same rate for chiropractic services, leaving some chiropractors in the same position.

- Some employers would no longer cover chiropractic care at all, leaving some chiropractors worse off.

- Some chiropractors do not treat any self-funded patients and, therefore, have not suffered any injury.

- Other chiropractors treat varying percentages of patients who are employed by different self-funded employers.

- Overhead expenses, experience, and competition among chiropractors varies by locale and would impact negotiations in a but-for world.

- Self-funded employers currently using Wellmark's statewide network of chiropractors would likely contract with fewer chiropractors, leaving some practitioners without patients working for self-funded employers.

- Some self-funded employers would shift to the Iowa Chiropractic Physicians Clinic, which pays lower rates than Wellmark, and chiropractors outside that network would lose patients.

- Sixty-three percent of chiropractic charges from 2010–2019 were billed at rates below Wellmark's, foreclosing recovery on those services.

- Some chiropractors were paid in full for their billed charges during the relevant period, suffering no recoverable injury.

- Other chiropractors were satisfied with the rate paid by Wellmark.

- Amounts collected on billings outside the Wellmark network varied.

The district court, in a thorough fifteen-page ruling, considered those variables and found that there would be "winners and losers" in the but-for world. Significantly, the court found that "[w]hether individual chiropractors would arrive at [better rates] . . . in negotiations with individual self-funded employers is not susceptible to common proof." The court also found that Chicoine has "not identified any way to sort through this issue [of antitrust injury] that would not require an assessment of individualized claims by chiropractor." After analyzing cases denying class certification with similar individualized proof problems, the district court found that "the Plaintiffs' antitrust claim will require analysis on a charge by charge basis to determine whether the chiropractor was fully paid and then on a chiropractor by chiropractor and employer by employer basis to determine whether a higher rate would have been negotiated absent the allegedly unlawful agreements." These findings are amply supported by the record.

The court included in its written ruling a concession made by Chicoine's lead counsel near the end of the oral argument at the class certification hearing where he admitted that the foregoing theory could not be proven classwide:

> [Counsel]: It doesn't -- we're not saying that we're -- that we would -- we would contract with individual self-fundeds. . . .
>
> So we're not -- we're not going to put on evidence that "but for" this, that, or the other thing, doctor so-and-so in some place in Iowa with a contract with a self -- with an employer there, and get paid more.
>
> Now, I would agree with you that if that was our theory that we have an individual situation that is not proveable class-wide. That is real clear, and that is what Wellmark is trying to say, is that -- is that we must prove that the self-funded -- the self-funded itself would pay us more than what Wellmark is paying. But, I mean, how speculative can you get? The self-fundeds probably wouldn't be paying [for] insurance at all for its employees.

Chicoine's lead counsel then sought to revive a liability theory he previously disavowed to avoid Wellmark's motion to dismiss—that the antitrust violation is Wellmark's *operation* of the agreements to uniformly underpay for chiropractic services. The district court determined Chicoine should be estopped from reviving that argument:

> Plaintiffs are judicially estopped from this late change of theory. "[J]udicial estoppel prevents a party from changing its position after it has successfully urged a different position to obtain a certain litigation outcome." *Godfrey v. State*, 962 N.W.2d 84, 100 (Iowa 2021). The Plaintiffs previously framed their case in a particular way to survive a motion to dismiss, an effort that was successful. The Court relied on those arguments, noting she might otherwise have dismissed the case. Notably, the Plaintiffs also framed their case in that same way in their 3/13/2020 Motion for Class Certification. The Plaintiffs cannot now abandon their theory.

(Alteration in original.)

The court denied Chicoine's motion for class certification on the grounds that the plaintiffs failed to meet the predominance requirement. The district court found Chicoine could not prove the threshold issue of antitrust injury on a classwide basis, and accordingly, common questions did not predominate over individual issues.

Chicoine filed an appeal as a matter of right under Iowa Rule of Civil Procedure 1.264(3) ("An order certifying or refusing to certify an action as a class action is appealable."). We retained the case.

## II. Standard of Review.

"We review a district court's class certification ruling for abuse of discretion." *Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 113 (Iowa 2017). "[O]ur review of the district court's ruling granting or denying certification of a class is limited because the district court enjoys broad discretion in the certification of class action lawsuits." *Benda v. Prairie Meadows Racetrack &*

*Casino, Inc.*, 989 N.W.2d 184, 191 (Iowa 2023) (quoting *Freeman*, 895 N.W.2d at 113). "We adopt a district court's findings if 'there is any reasonable basis in the record to support' them." *Id.* (quoting *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 326 (Iowa 2005)). "Reversal is appropriate only if the record reveals that the district court's decision was based on clearly untenable or unreasonable grounds." *Id.* (quoting *Stone v. Pirelli Armstrong Tire Corp.*, 497 N.W.2d 843, 845 (Iowa 1993)).

"Judicial estoppel is an 'equitable doctrine invoked by a court at its discretion,' and we therefore review questions of judicial estoppel for an abuse of discretion." *Kinseth v. Weil-McLain*, 913 N.W.2d 55, 66 (Iowa 2018) (quoting *Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 195 (Iowa 2007)); *see also Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 31 (1st Cir. 2004) (reviewing a judicial estoppel ruling for an abuse of discretion consistent with the unanimous view of other federal courts of appeals and because of the trial court's "intimate knowledge of the case at bar and [its] first-hand observations of the lawyers and their litigation strategies").

### III. Analysis.

"Class actions are governed by Iowa Rules of Civil Procedure 1.261 through 1.279." *Benda*, 989 N.W.2d at 191 (outlining the four requirements for class action certification: numerosity, common question of law or fact, fair and efficient adjudication, and adequacy of representation); *see also Freeman*, 895 N.W.2d at 114–15, 114 n.1 (outlining the thirteen factors for courts to consider when determining the fair and efficient adjudication requirement). We reiterate that "[o]ur class-action rules are remedial in nature and should be liberally construed to favor the maintenance of class actions." *Benda*, 989 N.W.2d at 191 (quoting *Comes*, 696 N.W.2d at 320). The plaintiffs have the burden to establish that the requirements for class certification are met. *Id.* at 192. "But at the class

certification stage, 'the proponent's burden is light.' " *Freeman*, 895 N.W.2d at 114 (quoting *City of Dubuque v. Iowa Tr.*, 519 N.W.2d 786, 791 (Iowa 1994)). Yet "[a] failure of proof on any one of the prerequisites is fatal to class certification." *Benda*, 989 N.W.2d at 192 (quoting *Vos v. Farm Bureau Life Ins.*, 667 N.W.2d 36, 45 (Iowa 2003)). Chicoine argues the district court abused its broad discretion in denying class certification. We disagree.

Under the fair and efficient adjudication requirement, "[a] key factor is whether 'common questions of law or fact predominate over any questions affecting only individual members.' " *Freeman*, 895 N.W.2d at 115 (quoting Iowa R. Civ. P. 1.263(1)(*e*)). We have held this is "a fundamental requirement for class certification." *Id.* at 109. "A claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, classwide basis, since such proof obviates the need to examine each class member's individual position." *Id.* at 119 (quoting *Vos*, 667 N.W.2d at 45).

The district court properly applied this "fundamental requirement" to deny certification. As the district court found, there are too many variables to adjudicate the threshold liability element of antitrust injury on a classwide basis. Ample evidence in the record supports the district court's finding. Numerous minitrials would be required to determine whether individual chiropractors would be better or worse off without the challenged Wellmark Administrative Services Agreements. Chicoine offered no expert testimony or viable model for a classwide adjudication of an antitrust injury. By contrast, in *Freeman v. Grain Processing Corp.*, we affirmed class certification where a model supported by expert testimony provided a basis for classwide adjudication of neighboring residents' pollution claims. *Id.* at 110–11, 124–25.

Class certification makes sense when there can be an "efficient resolution of the claims or liabilities of many individuals in a single action." *Id.* at 114 (quoting *Comes*, 696 N.W.2d at 320). Conversely, "class adjudication makes little sense if individual issues predominate. 'Inherent in our inquiry into the predomination issue is the recognition [that] the class action device is appropriate only where class members have common complaints that can be presented by designated representatives in the unified proceeding.' " *Roland v. Annett Holdings, Inc.*, 940 N.W.2d 752, 759 (Iowa 2020) (alteration in original) (quoting *Vignaroli v. Blue Cross of Iowa*, 360 N.W.2d 741, 744 (Iowa 1985)). Put simply, there is no net gain in efficiency if one class action trial won't avoid the need for numerous minitrials. The district court correctly ruled that Chicoine's claims are more like *Roland v. Annett Holdings, Inc.*—where we reversed class certification as an abuse of discretion because individual liability determinations on truckers' workers' compensation claims were required—than *Freeman*— where "the class-action trial would potentially determine liability and damages for the class as a whole." *Roland*, 940 N.W.2d at 760 (discussing *Freeman*).

Wellmark and the district court relied, in part, on *Butts v. Iowa Health System*, No. 13–1034, 2015 WL 1046119 (Iowa Ct. App. Mar. 11, 2015). In that case, four uninsured patients sued a regional healthcare system, alleging they were charged unreasonable rates for medical and hospital services compared to insured patients in a "two-tier pricing scheme" in violation of the "Iowa's Consumer Frauds Act, Iowa Code chapter 714H," and three common law theories. *Id.* at *1–2. The district court denied the plaintiffs' motion for class certification on several grounds, including that their claims involved too many "individualized determinations" and the "[p]laintiffs simply failed to prove a common, and acceptable, methodology to determine 'reasonable price.' " *Id.* at

*3. The court of appeals affirmed the denial of class certification because individualized hearings would be required:

> The district court would have to account for numerous individualized facts, including the nature of the plaintiff's medical condition, the treatment provided, the place at which the treatment was provided, the date of the treatment, whether the plaintiff applied for financial assistance, whether the charge was paid, whether the debt, if any, was discharged in bankruptcy, and whether there had been a judicial determination the charge was reasonable.

*Id.* at *7.

Wellmark argued that Chicoine's claims likewise involve too many individual variables as to whether each chiropractor was better or worse off but for Wellmark's agreements with the self-funded employers. The district court agreed:

> Differences in demographics, geographic distribution of self-funded employers, and the level of competition amongst chiropractors in any community would impact negotiations in a "but-for" world. These local market realities would impact whether negotiations would result in rates higher than those currently set by Wellmark or not.

And Chicoine, like the plaintiffs in *Butts*, failed to prove a common methodology to determine the threshold liability issue on a classwide basis. *See id.* at *5; *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187–90 (3d Cir. 2001) (affirming the denial of certification of a class of brokerage customers allegedly overcharged for automated stock trades because determining an antitrust injury could not be determined classwide but depended on individual variables requiring a charge-by-charge analysis).

The district court and Wellmark also relied on another on point case: *Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005). There, Randy Blades and several other farmer-purchasers of genetically modified (GM) corn and soybean seeds sued Monsanto, alleging it conspired with other producers "to inflate the

prices of their own GM corn and soybean seeds . . . rather than to undercut the fees through normal price competition." *Id.* at 565. The district court denied the plaintiffs' motion for class certification on the grounds that individual questions as to antitrust injury predominated over questions common to the class. *Id.* at 569–71. The district court recognized that "to satisfy the 'predominance' standard, plaintiffs must show that both conspiracy and impact can be proven on a systematic, class-wide basis." *Id.* at 569. "To establish antitrust impact, an expert is 'required to construct a hypothetical market, a *but-for* market, free of the restraints and conduct alleged to be anticompetitive.'" *Id.* (emphasis added) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir. 2000)). The district court found that the plaintiffs lacked a methodology or expert testimony to prove a classwide antitrust injury:

> Plaintiffs cannot determine the "but-for" marketplace necessary to establish antitrust impact without a reliable methodology to determine the premiums paid by farmers. In fact, the evidence presented at the class certification hearing showed that supply-and-demand conditions for seed sales vary to such a great extent that the "but-for" prices could be determined only through individualized inquiries for each potential class member. These factors include growing seasons and conditions, regional varieties and farmer preferences. Common proof simply cannot be used to establish a "but-for" marketplace in this situation, particularly where the evidence showed that the actual prices paid by many farmers was well below Monsanto's technology fee.

*Id.* at 570–71. The United States Court of Appeals for the Eighth Circuit affirmed the district court's determination that the plaintiffs "cannot prove classwide injury with proof common to the class." *Id.* at 572. The Eighth Circuit found no abuse of discretion in denying certification:

> The district court's discussion of this issue cites the following reasons: . . . (2) the market for seeds is highly individualized, requiring particularized evidence to determine the competitive price that would have prevailed in the locality of any individual farmer; (3) prices for GM seeds varied widely, and some farmers paid

negligible premiums or no premiums at all for GM seeds, as compared with corresponding non-GM seeds; (4) plaintiffs' expert did not show that the fact of injury could be proven for the class as a whole with common evidence.

We rely on the second, third, and fourth of these holdings. The wide variation in list prices among hybrids and the pricing of some GM hybrids with zero or negligible list price premiums, as compared with corresponding non-GM hybrids, would require the purchasers of some hybrids to prove injury through evidence that would vary according to individualized market conditions and thus would not be shared in common with the rest of the proposed classes. For the above stated reasons, we affirm the denial of class certification.

*Id.* (footnotes omitted).

Similarly, as the district court found, Chicoine has "not identified any common analytical tool or model that could demonstrate Plaintiffs were in fact injured. . . . Here, the competitive price that would have prevailed absent the [Wellmark] Administrative Services Agreement would also vary by locality, demographics, the size of the self-funded employer, and competition among chiropractors." This finding by the district court is well supported by the record.

Chicoine is represented by able counsel with extensive antitrust and class action experience.[4] We appreciate lead counsel's candor during the district court's hearing on class certification (quoted in full above) when he admitted that the foregoing liability theory could not be proven classwide. As the district court noted, "Plaintiffs' Counsel conceded that class certification would not be appropriate under the theory asserted in Plaintiff's class certification motion." The district court appropriately gave weight to this concession.

"The district court has considerable leeway when deciding whether to certify the class." *Freeman,* 895 N.W.2d at 115. We conclude that the district court acted within its broad discretion in denying class certification on the

---

[4]Chicoine's lead counsel has been pursuing antitrust claims on behalf of chiropractors for over forty years. *See, e.g.*, *Health Care Equalization Comm. of the Iowa Chiropractic Soc'y v. Iowa Med. Soc'y,* 501 F. Supp. 970 (S.D. Iowa 1980), *aff'd,* 851 F.2d 1020 (8th Cir. 1988).

grounds that individual questions predominate over common questions on the threshold liability issue of antitrust injury.

We also conclude the district court acted within its discretion in applying judicial estoppel to prevent Chicoine from belatedly reviving a different liability theory that Chicoine's counsel previously abandoned to avoid a motion to dismiss. "[T]he rule of 'judicial estoppel' prevents a party from changing its position after it has successfully urged a different position to obtain a certain litigation outcome." *Godfrey*, 962 N.W.2d at 100 (Iowa 2021). The doctrine is "designed to protect the integrity of the judicial process." *Id.* (quoting *Tyson Foods*, 740 N.W.2d at 196). We have applied judicial estoppel to bar a party from taking inconsistent positions at different stages of the same case. *See id.*; *see also Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 573–75 (Iowa 2006) (concluding that the employer was estopped from denying liability in the workers' compensation claim when it admitted liability earlier to control the care provided). Indeed, we have already applied judicial estoppel against other plaintiffs represented by the same counsel in this protracted litigation. *See Wellmark, Inc. v. Iowa Dist. Ct.*, 890 N.W.2d 636, 645 n.5 (Iowa 2017) (precluding chiropractors in the putative class action from reviving their rule-of-reason antitrust claim that they had previously stipulated out of the case to avoid a stay).

Choices have consequences. Attorneys may plead in the alternative, but shifting liability theories to avoid a dispositive motion or stay, and then asserting a different theory at trial is highly problematic. *See McCoy v. Thomas L. Cardella & Assocs.*, 992 N.W.2d 223, 231 (Iowa 2023) (reversing judgment for the plaintiff on a jury verdict and criticizing the plaintiff for "shifting positions" to avoid summary judgment and then recharacterizing her claims at trial); *see also State v. Duncan*, 710 N.W.2d 34, 43 (Iowa 2006) ("If [taking inconsistent

positions] were permissible, there would be no end of litigation, for with every defeat a party might change his ground, mend his hold, and proceed indefinitely." (alteration in original) (quoting *Snouffer & Ford v. City of Tipton*, 129 N.W. 345, 350 (Iowa 1911))).

The judicial toolbox thus includes the doctrine of judicial estoppel—which was properly applied yet again in this litigation, this time in denying class certification. In *Alternative System Concepts, Inc. v. Synopsis, Inc.*, the First Circuit affirmed a judicial estoppel ruling where the district court's review "paints a convincing picture of a litigant who took one position, used that position to its advantage at the motion to dismiss stage, and later attempted to switch horses midstream to revive a previously abandoned (and flatly inconsistent) claim."[5] 374 F.3d at 34–35 (describing counsel's shifting positions as "playing fast and loose," "carrying out a game of bait and switch," "artful dodging," and "smoke and mirrors").

Such a convincing picture is painted here. Chicoine previously argued that the antitrust violation was Wellmark's enforcement of the agreements to pay chiropractors lower fees. Wellmark moved to dismiss under the single-entity defense, arguing it acted as agent for the self-funded employers and the resulting single entity cannot conspire with itself to lower prices. To avoid that defense, Chicoine switched horses and argued that the antitrust violation was not

---

[5]This phrase—"to change horses midstream"—means "to make major changes in an activity which has already begun; to choose someone or something else after it is too late." Michael D. Moberly, *Swapping Horses in Midstream: A Comparison of the Judicial Estoppel Doctrine in Arizona and Nevada*, 32 Ariz. State L.J. 233, 233 (2000) (quoting Richard A. Spears, *NTC's American Idioms Dictionary* 53 (1991)). This expression "was originally popularized in this country largely as a result of Abraham Lincoln's explanation for his 1864 presidential nomination." *Id.* at 233 n.1. During his renomination campaign, Lincoln addressed a delegation from the National Urban League and "said that he did not presume to be the best man for the job, but his renomination instead reminded him of an old Dutch farmer's remark that it is 'not best to swap horses when crossing streams.'" *Id.* (quoting John C. Waugh, *Reelecting Lincoln* 202 (1997)).

payment of the lower rate under the agreements, but rather the fact that entry into the agreements themselves took the self-funded competitors off the playing field. Chicoine rode that horse all the way to the final minutes of the hearing on class certification. At that moment, facing denial of class certification on the predominance requirement, Chicoine tried to change horses again, jumping back onto the theory that the antitrust violation is the lowball price uniformly paid under the agreements, not the removal of the self-funded employers from the competitive playing field. The district court determined that the "[p]laintiffs are judicially estopped from this late change of theory." We hold the district court acted within its discretion in applying that doctrine.

**IV. Disposition.**

For these reasons, we affirm the district court ruling denying Chicoine's motion for class certification.

**AFFIRMED.**

All justices concur except Mansfield, J., who takes no part.