ROCK ISLAND PLOW COMPANY, Appellant, v. JAMES J. BRUNKAN et al., Appellees.

No. 41657.

APRIL 4, 1933.

Bronson, Charlton & Kehoe, for appellant.

A. M. Cloud, for appellee John Overmann.

EVANS, J.—The facts, as the trial court found them to be, may be stated briefly: The plaintiff is a manufacturer of farm implements. One Brunkan was a local implement dealer, who had contracted with the plaintiff company for the handling of its lines of merchandise. Brunkan operated under a written contract with the plaintiff. Defendant John Overmann became surety for Brunkan and signed an undertaking that Brunkan would perform his contract. The plaintiff was also a manufacturer of farm tractors. The contract with Brunkan, which was guaranteed by Overmann, expressly provided that it did not include in its terms any reference to the sale of tractors. These were to be handled under different terms. In settlement with Brunkan for the trade of 1927 and 1928, Brunkan executed notes to the amount of approximately $5,000. These notes were presented to Overmann for his signature pursuant to his surety contract. Upon his inquiry he was assured by plaintiff's agent that the notes thus presented included only the business transacted under the contract on which he was surety. He thereupon signed the notes. Shortly thereafter suit was brought upon the notes and no defense was offered. After judgment Overmann made a payment on the judgment of over $2,000. Shortly thereafter he discovered that the note of $1,199 set forth in count 5 was given for the purchase price of a tractor for which he was not liable under his surety contract. Upon such discovery he immediately employed counsel and filed the application herein. The ground upon which the court sustained the petition to vacate the judgment was that of "fraud practiced in obtaining the judgment". As a condition precedent to the vacation of a judgment under this chapter, it is requisite that the defendant present a good defense to the cause of action. The defense presented

in this case was that the defendant had been induced to sign the note in question by the false representation of the plaintiff as to the consideration of the note, as already indicated. The same false representations were pleaded in the petition to vacate the judgment. The attack upon the petition to vacate is that the fraud pleaded is *intrinsic* in the cause of action that went to judgment; whereas under the statute only such fraud as is *extrinsic* and collateral to the cause of action, and which operated fraudulently to *prevent a defense*, may be considered. The position of the appellant is summed up concisely in its final brief as follows:

"Can fraud inhering in the execution of a note sued upon be held to constitute extrinsic fraud sufficient to enable the setting aside of a default judgment procured on said note when no other or further fraud is claimed or shown in connection with the procuring of such judgment? * * * Admitting for the sake of argument a case where the grossest of frauds is practiced in procuring a note; suit properly brought on said note after the same is due; neither the maker nor the payee of said note having any dealings or making any representations to each other after suit is brought and default judgment rendered thereon. If it is to be held that the fraud inhering in the inception of the note is, also, extrinsic fraud practiced in procuring the judgment thereon, then the purpose and effect of serving an original notice of the suit is entirely erased."

To put appellant's contention in still fewer words it is: That "fraud practiced in obtaining the judgment" must be such as transpires *subsequent* to the fraud which constitutes a defense to the cause of action; and that therefore it cannot flow from a fraud perpetrated *before* suit was brought and which could have been litigated in the suit. The distinction thus urged as between fraud intrinsic and fraud extrinsic is sound and must be observed. The real debate, however, between the parties is the question of application of the rule of distinction. If Overmann was deceived by the plaintiff and induced thereby to sign a note not otherwise obligatory upon him, then he had a defense. The fraud thus perpetrated upon him operated to create a defense in his favor. Was the force and effect of the fraud thereby exhausted? Could the same facts continue to operate as an active concealment, which would still further work to the injury of the defendant in preventing his discovery of his existing defense? May the same facts operate as two frauds?

Clearly the representation complained of operated to create a *defense* to the note. In respect to such *defense* the effect of such representation was immediate and complete. Notwithstanding that fact, if the defendant could have discovered the fraud before judgment upon the note, he could have saved himself from the effect thereof. But by its very nature, the fraudulent representation continued to operate to the injury of the defendant in *preventing* discovery of his defense. Ordinarily, a defendant knows his defense. But where his adversary has the power of concealment of such defense, the exercise of such power by wrongfully withholding disclosure, may fairly be said to be a repetition of the original fraud. Plaintiff did owe the duty of true disclosure in the first instance. That duty was not extinguished by the breach of it. This in substance was the holding of the trial court.

As to our previous cases the nearest approach to the question here presented was had in Griffith v. Merchants Life Ass'n, 148 Iowa 727, 127 N. W. 1079. The trial court followed that case as its principal guide. That was an action upon an insurance policy brought by the beneficiary against the insurance company. The defense pleaded by the company was that the policy had been forfeited for nonpayment of an assessment. On the trial of the case the defendant prevailed. At a later time the plaintiff petitioned to vacate the judgment against her on the ground of "fraud practiced in obtaining the judgment". The fraud alleged was that the books of the insurance company disclosed that plaintiff's policy had a credit which fully met the alleged assessment and that the purported forfeiture was void and that the defendant-company had wrongfully concealed these facts from the plaintiff and had thereby prevented her from presenting such issue as against the defendant's claim of forfeiture. The claim of the company in that case, as here, was that such alleged fraud inhered in the issues upon which the case was tried and that it could not be classified as a ground for vacating the judgment. We said in that case:

"The validity of the assessment was not in issue at the trial. * * * The present contention that no assessment might properly have been made for that the insured already had a credit with the association, was not in issue, and therefore the alleged fraud by which plaintiff is said to have been induced not to raise such issue cannot be regarded as intrinsic. It did not relate to issues *actually*

*presented,* but consisted of *preventing,* by resort to deception, the plaintiff from pleading and proving other facts now alleged to have existed, and thereby to have resulted in the miscarriage of justice. Such fraud is *extrinsic,* and a judgment procured thereby may upon timely application be set aside."

See, also, Graves v. Graves, 132 Iowa 199, 109 N. W. 707, 10 L. R. A. (N. S.) 216, 10 Ann. Cas. 1104. Quoting its final word:

"In all these cases, and many others which have been examined, relief has been granted on the ground that by some fraud practiced directly upon the parties seeking relief against the judgment or decree, that party has been *prevented from presenting all of his case to the court.*"

Up to this point we have taken no account of one other circumstance disclosed in the record. The note in suit was signed in September, 1929. The suit thereon was begun March 21, 1930. In the latter part of February, or the first days of March, 1930, both Overmann and Brunkan went to Rock Island to the home office of the plaintiff to attempt negotiations concerning the notes upon which suit was later brought. Their negotiations were had at that time with O'Hare, the sales manager. At that conference, according to the testimony of Overmann, O'Hare repeated substantially the same false representation which had been previously made by the agent, Lennon, and which induced the signing of the note. Manifestly the statement by O'Hare would not have been available to the defendant as a defense because it did not induce the signing of the note. Nevertheless, it did tend to induce and confirm the belief of Overmann that he had no defense to such note. The representation, as then made by O'Hare, naturally operated as a concealment of the fact, which would have constituted a defense to the main action. If O'Hare made said representation at such time, the fraud, if any, was not intrinsic to the defense of the main case. If it was effective to mislead the defendant and to induce him to believe that he had no defense, then it is now available to the defendant, not as a defense to his main action, but as tending to show ground for new trial. It was available to the defendant to contend that such representation by O'Hare amounted to a fraudulent concealment of facts by means of which the defendant was induced to default and the plaintiff was enabled to obtain a judgment without encountering any defense.

The appellant appears to rely particularly upon Lang v. Dunn, 145 Iowa 363, 124 N. W. 192, 193, as direct authority on the question before us. We do not think that the cited case furnishes the appellant the support contended for. That was a suit in equity to enjoin the enforcement of a judgment that had been obtained in justice court. The discussion involved a consideration of the application of the statute now before us. But it was somewhat in the nature of dictum, which militates argumentatively against the position of the appellant rather than in support of it. For instance we held that upon that record the plaintiff was "in no manner induced to withhold his defense". We also said:

"If the contract upon which the judgment was obtained was forged or altered so that it was not plaintiff's contract, a different rule would obtain. Or if the plaintiff *had been induced* by some extrinsic * * * fraud not to make defense, or if the judgment itself had been obtained by fraud, plaintiff might attack it at any time or place."

It is to be noted in the case at bar that the issue of false representation and deception was not litigated in the main case. If the defendant had in fact appeared and answered in the case and had set up the alleged false representation, and had failed to prove it, a materially different question would be presented and we do not assume to pass upon the application of the rule in such a case. We hold only that upon the record before us the trial court properly applied the rule.

II. It is complained by appellants that the evidence was wholly insufficient to sustain the trial court in its finding of fact and in predicating its order for new trial thereon. The proceeding is at law and is not triable here *de novo* on the facts. In our judgment the evidence was sufficient to support the trial court in its finding of fact. The full extent of relief granted by the trial court was to award a new trial upon count 5. Such trial is yet to be had.

The order of the trial court is accordingly affirmed.

KINDIG, C. J., and ANDERSON, UTTERBACK, DONEGAN, KINTZINGER, and MITCHELL, JJ., concur.