CITY OF CHARITON, for itself, abutting property owners and general taxpayers of the City, appellee, v. J. C. BLUNK CONSTRUCTION COMPANY, a copartnership, et al., appellants.

No. 50317.

JANUARY 9, 1962.

REHEARING DENIED APRIL 2, 1962.

H. S. Life, of Oskaloosa, and H. E. De Reus, of Knoxville, for appellant J. C. Blunk Construction Company, copartnership, Estella M. Blunk and Donald J. Blunk.

J. R. McManus, of Des Moines, for appellant St. Paul Mercury Indemnity Company.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, and A. V. Hass, of Chariton, for appellant Employers Mutual Casualty Company.

Virgil E. Meyers, City Attorney, Stuart & Stuart, and W. W. Bulman, all of Chariton, for appellee, City of Chariton, for itself, abutting property owners and general taxpayers of the City.

THOMPSON, J.—Plaintiff's action, in four counts which we shall designate as Counts I, II, III, and IV, was in essence for damages for breach of four contracts entered into between the City of Chariton and defendant J. C. Blunk Construction Company, a copartnership, hereinafter known as the contractor, for the construction of paving in the city. Defendant St. Paul Mercury Indemnity Company, hereinafter known as St. Paul, was the surety on the contractor's performance bond on the first two contracts, and defendant Employers Mutual Casualty Company, hereinafter known as Employers, was surety on the bond on the third and fourth contracts. Trial resulted in a jury verdict for the plaintiff-city on Count I in the sum of $13,500; Count II, $39,600; Count III, $22,500; and Count IV, $27,200. Judgment was entered on the verdicts against the contractor in the total amount of $102,800; against St. Paul on Counts I and II, $53,100; and against Employers on Counts III and IV, $49,700. All defendants appeal.

The plaintiff entered into four contracts with the contractor for the paving of certain streets in the city, on September 2, 1950; October 5, 1951; June 17, 1952; and September 14, 1953. The work was done and accepted by the city on various dates thereafter, and payment made. It is to recover damages for what is now claimed to be defective performance of the contract that the present suit is brought, each count of the petition being based respectively on alleged breaches of the separate contracts in the order of their date. After the acceptances of the work and payment, it is claimed the city discovered the failures of the contractor to comply fully with its contract, and this action was commenced in 1955. The parties marched and counter-marched with many motions, amendments, and rulings of the court; and trial of the case when it was finally at issue required more than one month. So we have a voluminous record of approximately 1800 pages of printed matter; and the plaintiff and each defendant have argued the issues at length. However, the questions to be determined as we view the case are entirely law points. While defendant contractor at least does not so concede, we have concluded that there was a jury question on the sufficiency of the performance of the work. The basic claim of the city was that the thickness of the cement in the paving was not sufficient to meet the specifications. Many tests were made and hundreds of "cores", or segments taken by borings into the pavement at various points, were introduced in evidence. There was evidence of insufficiency of the required depth of cement in inches ample to require a fact-finding decision. This feature of the case will be discussed in later divisions.

I. From the legal standpoint, the first three contracts stand on a different basis from the fourth. As to these three a question of res adjudicata arises which is not present in considering No. 4. It appears that after the first three jobs had been completed, as claimed by the contractor, the work was approved by the city engineer and accepted by the city council. No question is made as to the legality of the acts of the council in so doing. Apparently much of the contract price had been paid by assessments against abutting property owners; but there was a balance under the three contracts of $69,915.20, with interest from date of the respective completions, payable from gen-

eral funds of the city. On October 16, 1953, the contractor, by its trustee, as to whose authority no question is raised, served an original notice on the city notifying it that a petition was then on file, alleging completion of the work and that the sum of $69,915.20, with interest, was due the contractor. The petition among other things alleged: "Par. 4. That the said J. C. Blunk Construction Company, by virtue of said contracts entered into and upon the work contemplated thereby, furnishing the labor, tools, plant, materials and services, all as therein set forth, and that said contractor has now fully performed each of his said respective contracts."

The city promptly filed its answer, admitting its corporate existence and capacity and denying the other material allegations of the petition for lack of information. On October 20, 1953, a stipulation was entered into by the parties providing the case might come on for hearing at the earliest convenience of the court, and that it might be tried by the court without a jury. On October 21, 1953, the court entered its written judgment. Therein it was stated: "Second. This court has received complete and satisfactory evidence to enable it to pass upon the merits of the action and to adjudicate the rights of the parties." It was adjudged that the sum of $69,915.20, with interest, as claimed, was due the plaintiff, and judgment was rendered accordingly, with costs taxed to the defendant city. Shortly thereafter the judgment was paid and satisfied of record.

It will be observed that the petition alleged the completion of the work in accordance with the first three contracts, and the court so found. The court also stated it had received complete and satisfactory evidence so that it could pass upon the merits of the action. It is this judgment which the defendants in the instant case claim to be an adjudication of all matters in controversy concerning the proper completion of the work in accordance with the first three contracts; and they allege the city is now estopped to relitigate any claim for damages for breach of the contracts.

II. The city attempts to meet the pleas of res adjudicata in these ways: 1, the judgment was by consent and so is not effective as an adjudication of the merits; 2, the issues were

different; 3, the parties were different; and 4, there was fraud in obtaining the first judgment now relied upon. We shall discuss these contentions in order.

III. We are unable to agree that the record here shows that the judgment in the first case, No. 17374, was consent judgment; or that if it did so appear, it would not be binding as an adjudication. First, however, we should refer to some testimony offered by the plaintiff to prove the judgment was by consent, which upon objection of the defendants was kept from the record. One Phil Dorweiler, after testifying that he was an attorney, was asked about his connection with case No. 17374. He testified that he was attorney for the City of Chariton in connection with bond matters; but he was not permitted to say how it happened that the suit was brought. An offer of proof was made, from which it appeared that there was doubt whether the city could legally issue general obligation bonds to pay the amount then assumed to be due the contractor on the first three contracts; and he concluded it would be best to have what he termed a "friendly" action brought and a judgment had against the city so that judgment funding bonds, as to the legality of which there would be no question, might be issued to pay the contractor; that the judgment in cause No. 17374 was had with the consent of all parties. Objection was made to this offer of proof and sustained by the court.

It may be this evidence should have been admitted, and the plaintiff entitled to the benefit of it in this court. "The successful party may, without appealing or assigning errors, save the judgment if an error was committed against him which, if corrected, will make the result reached below a right result." Iowa Electric Co. v. Home Insurance Co., 235 Iowa 672, 676, 17 N.W.2d 414, 416. But, assuming the admissibility of this testimony, we think there is an insufficient showing that the judgment was by consent. A judgment does not become a judgment by consent even though the parties have added their consent to an adjudication of the court. 49 C. J. S., Judgments, section 173, page 309. In the case before us, the court said it had before it "complete and satisfactory evidence to enable it to pass upon the merits of the action." There is no indication in

the judgment itself that it was a consent judgment. Many courts hold the consent must appear on the face of the record. Blair v. Dickinson, 136 W. Va. 611, 68 S.E.2d 16, 18; Clement v. Ferguson, Okla., 287 P.2d 207, 211; Culpeper National Bank of Culpeper v. Morris, 168 Va. 379, 191 S.E. 764, 767. In Harter v. King County, 11 Wash.2d 583, 591, 119 P.2d 919, 923, in a situation identical with the one before us here, it is said: "In the instant case, the court expressly purports to rest its decree upon the evidence in the case, not upon any consent of the parties, and the decree must be taken as evidencing the studied decision of the court, based on evidence rather than on an agreement of the parties."

 Nor are we prepared to agree that a consent judgment is not an adjudication against the parties. We quote from 30A Am. Jur., Judgments, section 150, pages 256, 257: "And notwithstanding flat statements to the contrary in some of the cases, which, however, in their actual holdings fail to bear out these statements, it is well settled, as a general proposition, that a judgment or decree, though entered by consent or agreement of the parties, is res judicata to the same extent as if entered after contest."

Freeman on Judgments (Fifth Ed.) Volume 3, section 1350, says: "Such a judgment has substantially the same effect as any other judgment rendered in ordinary course, and is entitled to the same presumptions. As we have elsewhere seen, *it is equally conclusive as to matters adjudicated,* is not subject to collateral attack except upon jurisdictional grounds, and is entitled to full faith and credit in a sister state." (Italics supplied.)

The plaintiff cannot avoid the bar of adjudication by claiming the first judgment was by consent.

IV. We may deal shortly with the claim that the issues were not the same in the two cases. The issue in No. 17374 was whether the contractor had completed the work in accordance with the contracts, so that payment was due. It was held this had been done. The issue in the present case was whether the work had been done as the contracts required, or whether there were defects so that payment should not have been made, but on the other hand the city was entitled to damages for failure

to perform the contracts. We see no possible difference. The issue was identical in each case.

■ V. Next the city says No. 17374 is not an adjudication against it because the parties were not the same there as in the case at bar. Its contention comes to this: in the first case it did not represent the owners of abutting property who paid assessments, but only itself and the general taxpayers; while in the case now before us it represents not only the general taxpayers but, as its petition recites in its caption and elsewhere, the abutting property owners as well. Again we are not in accord. It is the duty of the city to represent the property owners and taxpayers in matters such as this. The city is empowered to provide for public improvements such as those involved, and if it proceeds in accordance with law, as it is its duty to do, the property owner has nothing to say about the matter with certain exceptions not material here. Matters of contract and its performance, absent fraud or collusion between the city and the contractor, are in the hands of the city. The city makes the contracts for the improvements; it accepts the work when completed. In so doing, it acts not only for the general taxpayers but for the property owners who must pay assessments. It is true the city council must act according to law and use its best judgment; if it does not, it may be amenable to the taxpayers or the abutting owners. But if it does so act, it is the representative of both classes and acts for them. In Atkinson v. City of Webster City, 177 Iowa 659, 677, 158 N.W. 473, 479, we said: "The city council, in providing improvements of this kind, acts as an agent of the taxpayer and abutting owners, but without consulting them; hence the necessity of the rule that the statute empowering them must be strictly construed." Again, in Cardell v. City of Perry, 201 Iowa 628, 634, 207 N.W. 775, 777, it is stated: "The city is but the agent for the property owners, and it is true that the property owners have little, if anything, to say during the progress of the work." The city represents the public, both abutting owners and taxpayers, in making the contract and accepting the work. A suit against it which has as its major issue the proper performance of the work according to the contract must necessarily bind both classes.

█ VI. The city attempts to avoid the bar of adjudication by the judgment in No. 17374 by its claim of fraud in that the contractor at the time of bringing suit and obtaining the judgment knew of the defects and overcharges in the work and failed to disclose this knowledge to the city. At this point we may deal shortly with the defendants' claim that the city had equal means of knowledge; that it was not diligent in discovering the insufficiencies; and that it is now barred by the compulsory counterclaim rule, R.C.P. 29. The city acted on the certification of its engineer that the contracts had been properly completed; and while we do not find it necessary to decide whether these actions of the engineer showed that he colluded with the contractor to defraud the city, we do think the city cannot be accused of lack of diligence in discovering the fraud, if such there was, at the time of the proceedings in No. 17374. Nor could it be required to counterclaim when it had no knowledge of any basis therefor. We find no merit in these contentions of the defendants.

We shall assume in the following discussion that the contractor was guilty of fraud in that it had not properly completed the work and did not make this known to the city, but on the other hand asserted the paving was laid in accordance with the contracts. In so assuming, we are not to be understood as holding there was or was not fraud; we make the assumption for the purpose of the discussion which follows.

█ The present action is without doubt a collateral attack on the judgment in No. 17374. The city says it is not, for the reason that judgment was paid and satisfied, and so could not be attacked in any more direct manner. We know of no reason why a judgment obtained by fraud cannot be the subject of a direct attack, by an action in equity, even though it is satisfied. To so hold would in many cases mean that once a fraudulent judgment is satisfied before the fraud is discovered, there would be no recourse. The rule is thus stated in Restatement, Judgments, section 113(d), page 540: "A court giving equitable relief from a judgment may direct that the respondent shall * * * (d) return to the complainant property which has been taken by proceedings under the judgment or the value of such property." Under the heading of "Comment on Clause (d),

at page 545, it is said: "Where property has been received as a result of a judgment improperly obtained equity may order the respondent to reconvey it." As to what constitutes a collateral attack, see Reimers v. McElree, 238 Iowa 791, 795, 28 N.W.2d 569, 571; 31 Am. Jur., Judgments, section 611.

In the Reimers case we quoted with approval this definition of a collateral attack saying it is " '* * * an attack made by or in an action or proceeding that has an independent purpose other than the impeaching or overturning of the judgment, although impeaching or overturning the judgment may be necessary to the success of the action.' " The quotation is from 31 Am. Jur., Judgments, section 611. It is now found in 30A Am. Jur., Judgments, section 852, page 770. The plaintiff's action here meets every feature of the definition just quoted. We also approved this definition in Anderson v. Schwitzer, 236 Iowa 765, 772, 20 N.W.2d 67, 71, and there cited also Brown v. Tank, 230 Iowa 370, 374, 297 N.W. 801, 803, 804, where a similar definition was approved.

A collateral attack upon a judgment is not ordinarily permitted. Finality of solemn adjudications of the courts requires that they be not set aside lightly or except for cogent reasons. If this were not so, there would be no end to litigation; and this is true even when the original judgment has been obtained by perjury or, generally, through other forms of fraud. If the court had jurisdiction of the parties and of the subject matter, the general rule is that the judgment entered may not be collaterally attacked on the ground of fraud or collusion or false testimony. 30A Am. Jur., Judgments, section 878, page 789. There are, of course, cases in which the fraud goes to the jurisdiction of the court, so that there was in fact no jurisdiction. This situation is most often found, perhaps, in divorce matters. See In re Estate of Lorenz, 244 Iowa 338, 56 N.W.2d 884. Under such circumstances, the court having been without jurisdiction, the judgment may be collaterally attacked. But in the case before us the court had full jurisdiction both of the subject matter and of the parties. The plaintiff says there is an exception, in that a judgment may always be collaterally attacked where there is extrinsic fraud in obtaining it; or, as we

have noted above, that since the judgment was satisfied, there was no way to set it aside and so any attack must be of necessity collateral. We have pointed out that a satisfied judgment may still be the subject of an action in equity to set it aside; and see Scheel v. Superior Mfg. Co., 249 Iowa 873, 89 N.W.2d 377. There we said the industrial commissioner "performed the function of the district court" in entering his finding. Loc. cit. 249 Iowa 883, 89 N.W.2d 383, and we held the action in equity to set aside the "judgment" of the commissioner was properly brought, although it was satisfied.

VII. The defendants say plaintiff's action should have been brought under Rules of Civil Procedure 252 and 253, which provide for filing a petition to vacate, correct or modify a final judgment or to grant a new trial on the ground that it has been obtained by fraud (rule 252(b)); and prescribe the procedure for notice and hearing. Rule 253 says this must be done within one year from the rendition of the judgment. It is obvious in many cases, as the present one, more than one year will have elapsed before the fraud is discovered; and we have often held that where, with reasonable diligence, the fraud was not discovered within one year, relief may be had by an action in equity to set aside the judgment, and the action will be treated as a petition for a new trial. Scheel v. Superior Mfg. Co., supra, loc. cit. 249 Iowa 881, 89 N.W.2d 382, and citations. Defendants' contention on this point is not well taken.

VIII. Of course, the plaintiffs did not proceed by an action in equity to set aside the judgment rendered in No. 17374, so that discussion whether they should have proceeded within one year is pointless. The real question here is whether they did make a collateral attack on the judgment, and if they did so, whether such an attack was permissible. We have already pointed out that the attack is clearly a collateral one within the definition we approved in Reimers v. McElree, and Anderson v. Schwitzer, supra. The plaintiff in its petition does not ask that the previous judgment be set aside; it ignores it and asks damages upon a contention which was clearly answered adversely to it in No. 17374, where the court found the paving on the first three projects had been completed in accordance with the contract and entered its judgment accordingly. The re-

maining question, therefore, is whether such an attack will lie. We have above referred to the general rule that a judgment duly entered with full jurisdiction of the subject matter and of the parties may not be collaterally attacked on the ground of fraud or collusion in obtaining it. However, there are in some of the cases statements that such a judgment may be collaterally attacked. There is apparent confusion as to what constitutes a "collateral" attack, and some reference must be made to these matters. Thus, in Kwentsky v. Sirovy, 142 Iowa 385, 392, 121 N. W. 27, 30, it is said: "But, if the fraud * * * is practiced in the very act of obtaining * * * the judgment" it "may be collaterally attacked." However, the opinion shows that the court was there dealing with a case of lack of jurisdiction. Some days after the decree in the original judgment had been rendered, it was materially altered by the court, without notice to or knowledge of one of the parties. The court at that time had lost jurisdiction, and the added part of the judgment was entirely void. Such a judgment may always be attacked collaterally; it is in effect no judgment. Brown v. Tank, 230 Iowa 370, 374, 297 N.W. 801, 803. And we also said in the Kwentsky case there was no occasion to determine whether the decree might have been attacked collaterally since it was held the attack there was direct. The language quoted was dictum, and is an illustration of the confusion existing in the cases as to what is a direct and what is a collateral attack, and when fraud may be used as a ground for setting aside a previous judgment.

It is said in 30A Am. Jur., Judgments, section 853, pages 770, 771: "The challenge of the integrity of a judgment in the action wherein the judgment is rendered is regarded as a direct attack upon the judgment. * * * it has also been held that a judgment may be subjected to a direct attack in an independent proceeding." We think this lays down the true rule. An action in equity to set aside a judgment, which we have often approved, is a direct challenge to the judgment. Questions of extrinsic or intrinsic fraud have their proper application to such a proceeding. That is to say, an equitable action to set aside a judgment will lie where the fraud is extrinsic; it will not lie when it is intrinsic. All our cases, with the exception of Kwentsky v. Sirovy, Reimers v. McElree, both supra, and Edgerly v.

Sherman, 252 Iowa 352, 358, 359, 107 N.W.2d 72, 76, which deal with the question, are actions in equity to set aside or vacate judgments, as we shall presently point out.

We have for many years followed in Iowa the definition of extrinsic and intrinsic frauds and the distinction between them as laid down in United States v. Throckmorton, 98 U.S. 61, 65, 66, 25 L. Ed. 93, 95. And, following that rule, we have held that a judgment may be attacked on the ground of fraud extrinsic to the proceedings in court. If the fraud is intrinsic, even though it be not discovered until after the year allowed by rules 252, 253, supra, the judgment is a finality. Edgerly v. Sherman, supra, 252 Iowa 352, 358, 359, 107 N.W.2d 72, 76; Scheel v. Superior Mfg. Co., loc. cit. 249 Iowa 882, 89 N.W.2d 382, 383; Reimers v. McElree, loc. cit. 238 Iowa 800, 28 N.W.2d 573.

IX. Iowa cases cited and relied upon or found by our own research which discuss the doctrine of extrinsic and intrinsic fraud and hold that a judgment may be attacked because of the supposed presence of the former, with the exception of the three noted in Division VIII above, are found without exception to be direct attacks upon judgments, or probate proceedings, or orders of the commissioner in workmen's compensation cases. They do not ignore the previous judgments, but are direct attempts to set them aside. We shall endeavor to point this out. Scheel v. Superior Mfg. Co., supra, was an equitable action asking that an order of the workmen's compensation commissioner be set aside as fraudulently procured. We held there was evidence of extrinsic fraud, and set the order aside. Kirby v. Holman, 238 Iowa 355, 25 N.W.2d 664, concerned a motion to vacate a judgment. In Doyle v. Dugan, 229 Iowa 724, 732, 295 N.W. 128, 132, the question was whether an agreement between employer and employee concerning workmen's compensation had been obtained by fraud. We said: "As above pointed out, the relief here sought, insofar as the avoidance of the agreement for workmen's compensation is concerned, was equitable relief. * * * Appellant made no objection to the matter being tried on the law side of the calendar." Rock Island Plow Co. v. Brunkan, 215 Iowa 1264, 248 N.W. 32, was an action to vacate a judgment on the ground of fraud. Foote v. State Savings Bank, 201 Iowa

174, 206 N.W. 819, was a suit to cancel a judgment for fraud. In re Estate of Zachary, 165 Iowa 309, 145 N.W. 883, was an action to vacate an order denying probate of a will. Dennis v. Harris, 179 Iowa 121, 153 N.W. 343, was a suit to set aside a decree of divorce alleged to have been fraudulently obtained. In Frisbie v. Chase, 161 Iowa 133, 140 N.W. 842, the plaintiffs asked that a quieting-title decree previously rendered be set aside and they be permitted to defend.

Griffith v. Merchant's Life Association, 148 Iowa 727, 127 N.W. 1079, dealt with a petition for a new trial on the ground of fraud. It is one of the cases in which we said the fraud was extrinsic and therefore the relief asked by the petition should have been given. Tollefson v. Tollefson, 137 Iowa 151, 114 N.W. 631, involved a petition asking that a divorce decree previously rendered be set aside on the ground of fraud in obtaining it. Again in Wood v. Wood, 136 Iowa 128, 113 N.W. 492, 12 L. R. A., N. S., 891, 125 Am. St. Rep. 223, the issue was whether a divorce decree should be set aside for fraud, and the attack was by petition directly asking such relief. Graves v. Graves, 132 Iowa 199, 109 N.W. 707, 10 L. R. A., N. S., 216, 10 Ann. Cas. 1104, also concerned a motion for new trial in a divorce action; the motion alleging fraud. We there said: "* * * false swearing or perjury alone is not ground for setting aside or vacating a judgment. But, if accompanied by any fraud extrinsic or collateral to the matter involved in the original case sufficient to justify the conclusion that but for such fraud the result would have been different, *a new trial* may be granted." (Italics supplied.) Loc. cit. 132 Iowa 205, 109 N.W. 709. In Tucker v. Stewart, 121 Iowa 714, 97 N.W. 148, the issue was raised by an action to set aside an order approving a final report of an administrator with will annexed. There is some language in both Reimers v. McElree, 238 Iowa 791, 28 N.W.2d 569, and Edgerly v. Sherman, 252 Iowa 352, 107 N.W.2d 72, both supra, which indicates an entirely collateral attack on a judgment might be sustained by a showing of extrinsic fraud. However, the expressions were dictum, since we found no such fraud and upheld the judgments.

We have gone into detail in describing the nature of the actions in the cases cited above for the purpose of showing that

all of them, with the exceptions noted, involved direct attacks on the orders or decrees or judgments thought to have been fraudulently obtained. This includes the basic case of United States v. Throckmorton, supra, where the plaintiff asked a decree in chancery setting aside two certain decrees confirming title to lands. In these cases is found the discussion of extrinsic and intrinsic fraud. Some of the cases seem to regard a petition to set aside a judgment on the ground of fraud not discovered until after the expiration of the one-year period permitted by our rules 252 and 253, as being a collateral attack on the judgment. We need not determine this point. The attack in such a case is at least direct in that it is leveled directly against the offending judgment; it is collateral only in that it is not brought in the original proceeding but is an independent action in equity.

But it is in this class of cases, and this class only, that the question of extrinsic or intrinsic fraud becomes relevant. There is no Iowa case to which we are cited or which we have discovered which holds that even extrinsic fraud will permit the maintenance of an action which seeks to retry the same issue involved in a previous judgment entered with full jurisdiction without first in some manner setting aside such judgment. That is what the plaintiff has attempted here. It has not asked that the judgment in No. 17374 be set aside; it seeks to ignore it. This can be done only if the previous judgment is entirely void; and, as we have pointed out above, a judgment by a court having full jurisdiction, even if based on fraud, is voidable only.

The holding of each of the cases listed above which concerned direct attacks on the first judgment, with the possible exception of Kwentsky v. Sirovy, where there was an entire absence of jurisdiction to enter that part of the decree attacked, and the dictum in the Reimers and Edgerly cases is that when a previous judgment is directly attacked, as by an independent action in equity asking that it be set aside, the question of extrinsic or intrinsic fraud must be determined. If extrinsic fraud was present and influenced the granting of the original judgment, the action to set it aside will lie; but if the fraud was intrinsic only, the judgment must stand. What constitutes extrinsic fraud as distinguished from intrinsic is dealt with and defined by

the Throckmorton case and many of our own decisions, and we shall not attempt to decide which particular variety, if any, was present here.

We hold that even extrinsic fraud does not permit such an entirely collateral attack as was made by the plaintiff-city. It had its remedy, if extrinsic fraud there was, by an action to set aside the judgment in No. 17374 and to recover the money there paid; and when the judgment was once set aside, it then could have not only denied liability but counterclaimed in the original action for its damages. As it was, it proceeded as though the original judgment were entirely void and sought to relitigate the same issues there determined, while that judgment was in full force and effect. We had before us the same situation as to identity of issues in Trustees of Green Bay Levee & Drainage District v. Alexander, 252 Iowa 801, 809, 108 N.W.2d 593, 598, where we said: "An examination of plaintiffs' cause of action in this action and plaintiffs' (defendants here) cause of action in case number 7703 discloses plaintiffs here are asking to do the very thing enjoined in case number 7703." We held there had been an adjudication which prevented relitigation of the issue. The Green Bay case also contains a discussion of what constitutes identity of parties and subject matter. See also Gagen v. Bankers Trust Co., 251 Iowa 953, 956, 103 N.W.2d 743, 745.

It is our conclusion that the true rule in this class of cases is that when a judgment has been entered with full jurisdiction of the subject matter and of the parties it may not be collaterally attacked in an action that has an independent purpose other than the overturning of the judgment; which merely seeks to relitigate the same issues determined by the judgment. This is so even though the first judgment was obtained by fraud, unless the fraud goes to the jurisdiction of the court. A judgment entered with full jurisdiction, if obtained by fraud other than that which vitiates the jurisdiction, may be attacked only by a direct action in equity to set it aside. If such an action is brought, the question whether the fraud was extrinsic or intrinsic must then be determined; if it is found to be extrinsic the judgment will be set aside; if intrinsic only, the judgment will stand.

We do not find it necessary to discuss other issues raised by defendants in connection with the first three counts of the petition. The motions for directed verdict as to these three counts should have been granted because the issues sought to be litigated therein are barred by the doctrine of res adjudicata.

X. Count IV of the petition is based upon failure to comply with the terms of the contract for paving a fourth project which was not involved in the judgment in No. 17374, and that judgment does not lie across the plaintiff's pathway to recovery on this count. Apparently the work on this project had not been completed when cause No. 17374 was commenced and it was not involved in that action. It must also be kept in mind that the defendant St. Paul is not involved in Count IV. It was surety on the contractor's bond only on the first two projects which were the subject of controversy in the first two counts. Consequently it was not made a defendant in Count IV, and whatever errors it asserted or arguments it made do not apply to Count IV.

Employers was the surety on the contractor's bond as to the project involved in Count IV, and is made a defendant therein. However, its assigned errors relate only to Counts I, II and III (named in said assignments as Count IA, IIA and IIIA). These counts have already been disposed of by our holdings in previous divisions. We turn then to the errors assigned by the defendant contractor as to Count IV.

These are five in number. The first concerns the question of res adjudicata because of the judgment in No. 17374, and has already been decided. The second assignment asserts the court should have granted defendant's motions for directed verdict as to all four counts. We shall discuss this as it applies to Count IV.

 Generally, an acceptance of the work done under a contract such as the one involved here is final, and estops the municipality from later questioning the proper completion of the contract. Sioux City v. Western Asphalt Pav. Corp., 223 Iowa 279, 291, 271 N.W. 624, 632, 109 A. L. R. 608; City of Ottumwa v. McCarthy Improvement Co., 175 Iowa 233, 243, 150 N.W. 586, 590, Ann. Cas. 1917E 1077. But this rule does not

apply if the acceptance was induced by fraud, as the cited cases point out. The city claims there was such fraud here.

The contract with which we are concerned in Count IV required the pavement to be six inches in thickness, or depth of cement. We accept the evidence on this point, for the purposes of this discussion, as set out in the brief and argument of defendant contractor, where it is said: "The average thickness of the concrete paving under Contract Four is 5.3995 inches." There is evidence of an even larger deficiency which the jury had the right to consider. But taking the average as stated by the contractor, there was a deficiency of slightly over .6 of an inch. A jury might well find in this a failure of substantial compliance. The contractor, having laid the paving, must be held to have known of this shortage when the work was accepted. The city inspectors specially employed to watch the work as it progressed certified that it was properly done. Whether this shows they fraudulently colluded with the contractor to defraud the city, or whether it was the result merely of negligence or incompetence on their part we need not decide. Knowledge of the deficiency on the part of the contractor was sufficient to make at least a jury question of fraud which would vitiate the settlement by acceptance of the work. We said in the Sioux City case, supra:

"Appellants in argument admit that the cores showed only an average thickness of but 4.87 inches. This, coupled with the testimony of the expert witnesses that the cores taken in making the tests showed little wear, was, we think, in effect an admission of such deficiency in the thickness of the paving as to constitute actual fraud on the part of the contractor." Loc. cit. 223 Iowa 295, 271 N.W. 635.

Perhaps the flat statement that the deficiency constituted actual fraud should be amended by saying that it constituted sufficient evidence of fraud to submit to a jury for its consideration. That is what the trial court did here, and we think there was evidence ample to require such submission.

XI. Complaint is also made that there was not a proper showing of the measure of damages. It is settled law in Iowa that when a contractor who does work for a municipality in making public improvements does not substantially comply

with his contract, he is not entitled to compensation, either under the terms of his contract or by quantum meruit. In the Sioux City case, supra, we stated the rule thus:

"The law is well settled in this state that where a contractor has failed to substantially comply with the specifications, and is thereby barred from recovering the contract price agreed upon, he may not recover on quantum meruit from the city or the property owners, and this would be especially true where the contractor is guilty of fraud in the construction of the pavement." Loc. cit. 223 Iowa 300, 271 N.W. 637. Cited are a series of cases involving a paving contract in the city of Tipton: Wingert v. City of Tipton, 134 Iowa 97, 108 N.W. 1035, 111 N.W. 432; Snouffer & Ford v. Grove, 139 Iowa 466, 116 N.W. 1056; and Snouffer & Ford v. City of Tipton, 150 Iowa 73, 129 N.W. 345, Ann. Cas. 1912D 414.

In the latter case we said: "That an ordinary action of quantum meruit will not lie in such cases, where the contractor has failed to substantially comply with the terms of his contract, is well settled by authority." Loc. cit. 150 Iowa 76, 129 N.W. 347.

We hold there was a jury question both as to whether there had been substantial compliance with the contract and whether there was fraud in inducing the city to accept the work and make payment for same. It must follow that if the jury found both issues against the contractor, as it must have under the instructions of the court before it could return a verdict for the city, the city was entitled to recover the sum paid the contractor. If he had not substantially complied, he was not entitled to be paid either the amount stipulated in the contract or on quantum meruit. The record shows ample evidence of the amount paid him by the city, and this would be the measure of the city's recovery after it learned of the defective work and the fraud inducing the settlement and its acceptance. The city offered competent proof of the amount paid the contractor under the contract involved in Count IV. Actually the verdict of the jury is for a considerably less amount; but the point is not raised and we give it no further attention.

XII. The defendant contractor urges that the contract provides that evidence of collusion or dishonesty between the con-

tractor and the inspecting engineers must be such as to amount to "conclusive proof"; and there was no such proof. We have previously said there was sufficient evidence of fraud to require a jury determination without considering the question of collusion, and we need not decide the point. It is true the matter of collusion was submitted to the jury; but for reasons set out in the following division we do not consider the instructions, either requested or given, or the exceptions to them.

XIII. We set out the defendant contractor's Proposition Four relied upon for reversal: "Proposition Four. The lower court committed reversible errors prejudicial to the defendants, when it rejected the instructions requested by the defendants, and when it overruled the defendants' exceptions to the Court's Statement of Issues and Instructions."

It will be observed that this is an omnibus assignment. It covers a wide territory, and in no respect particularizes as to which instructions are thought objectionable, or the reasons therefor. Rule of Civil Procedure 344 sets out what appellants' opening brief must contain. Paragraph (3) provides there must be "a statement of errors relied on for reversal when the appeal presents questions of law * * *." Paragraph (4) says these must be:

"(First) A statement of the 'error' or 'proposition' relied on and discussed in that division, with references to the pages and lines of the record, sufficient to show fully the manner in which the error arose and the ruling of the trial court thereon.

"(Second) Separately numbered or lettered brief points substantially conforming to the 'Statement of Errors' or 'Propositions' and stating without argument the grounds of complaint of the ruling and citing authorities supporting each point.

"(Third) The argument shall follow the statement of the brief points and authorities in each division, and be confined thereto. Errors or propositions not stated or argued shall be deemed waived.

"(b) If two or more errors relied on present closely related propositions of law or fact, the brief points and arguments may be presented on one division."

There are no brief points set out in the brief, and the assignment contains no references to the pages and lines of the

record which show the error relied upon. The only argument is found in the statement that some of the propositions of law involved have been discussed in previous divisions, without reference to the places where such discussions may be found; and further by setting out the requested instructions and exceptions to those given by the court, with the assertion that the instructions and exceptions themselves sufficiently show the reasons why those requested should have been given or the exceptions sustained. No authorities are cited. This manner of presentation is not only not in accord with rule 344, but is highly confusing. We are not prepared to sanction it. We have often said that we prefer to decide cases on their merits and will overlook technical defects in complying with the rules governing appeals. But we have also often found the failures to observe prescribed procedures so extensive that in fairness to opposing counsel and because of the confusion and uncertainty occasioned we have been compelled to follow the rules as written.

In Miller v. Griffith, 246 Iowa 476, 482, 66 N.W.2d 505, 509, where we were faced with an identical situation, we said: "Error is assigned in the refusal of the court to withdraw the question of damage to plaintiff's automobile. There are no brief points and no reference as to where in the record this matter may be found. We do not consider this question."

In Young v. Marlas, 243 Iowa 367, 370, 51 N.W.2d 443, 445, we stated: "Rule 344(a)(3), R. C. P., requires that the 'errors * * * shall be separately stated and numbered.' Such general assignments as defendants make do not comply with the rule. They do not necessitate our review of all of the grounds of the motions or all of the instructions to the jury."

See also Leytem v. Fireman's Fund Indemnity Co., 249 Iowa 524, 85 N.W.2d 921; Anderson v. Elliott, 244 Iowa 670, 57 N.W.2d 792; Carlson v. Bankers Trust Co., 242 Iowa 1207, 50 N.W.2d 1.

There are also many cases in which we have considered errors not assigned or argued in accordance with the rule. But in the present case there are so many separate instructions, both those requested and those given by the court over exceptions by the defendants, and depending upon different questions of law and interpretations of the facts in evidence, that we must decline

the task of sorting out the various grounds of complaint and making our own research for supporting or contradicting authorities. We conclude defendant Blunk's fourth assignment of error cannot be considered.

XIV. The fifth and last assignment of error, Division Five, is thus stated: "The separate verdicts rendered totaling $102,800.00 plus interest and costs in connection with Count One-A, Count Two-A, Count Three-A and Count Four-A are contrary to the evidence shown by the Record and the law applicable; they are not based upon competent proof but upon conjecture and speculation aided by bias and prejudice; and the verdicts and each of them should be set aside and held for naught." This assignment is not argued, except with the statement that "separate Briefs and Arguments prepared and filed by co-counsel for the appellants are adopted as a part of this Brief and Argument." We find nothing in the briefs of defendants' St. Paul Mercury Indemnity Company and Employers Mutual Casualty Company which in any manner touches upon the question of the sufficiency of the evidence as we understand the point attempted to be raised by this fifth assignment.

We have often held that errors not argued are deemed waived. Waterloo Savings Bank v. Waterloo, Cedar Falls & Northern R., 244 Iowa 1364, 1376, 1377, 60 N.W.2d 572, 579, and citations. In fact, and so far as we understand this assignment, questions of the sufficiency of the evidence have been determined adversely to the defendants in previous divisions of this opinion.

XV. We have given attention to all errors properly assigned and argued. It is our conclusion that the case must be reversed as to the judgments on Counts I, II and III, and affirmed as to Count IV. The cause is remanded as to Counts I, II and III, with directions to enter judgments for the defendants on each count. Costs will be three fourths against the plaintiff and one fourth against defendants J. C. Blunk Construction Company and Employers Mutual Casualty Company. —Affirmed in part and reversed in part, with directions.

All JUSTICES concur except BLISS, J., not sitting.