Rebecca A. HOTH, Administrator
of the Estate of Bobbie J.
Hoth, Appellant,

v.

IOWA MUTUAL INSURANCE
CO., Appellee.

Rebecca A. HOTH, Administrator
of the Estate of Bobbie J.
Hoth, Appellant,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Appellee.

No. 96–1983.

Supreme Court of Iowa.

March 25, 1998.

Rehearing Denied May 11, 1998.

Kathleen Neylan, Elkader, for appellant.

Donald H. Gloe of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellee Iowa Mutual Insurance Company.

Robert L. Sudmeier and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for appellee United States Fidelity and Guaranty Company.

Considered by LARSON, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

CARTER, Justice.

Rebecca A. Hoth, administrator of the estate of Bobbie J. Hoth, deceased, appeals from an adverse summary judgment in con-

solidated actions seeking recovery of under-insured motorist benefits from appellees, Iowa Mutual Insurance Company (Iowa Mutual) and United States Fidelity and Guaranty Company (USF & G). The district court sustained motions for summary judgment filed by these insurers based on its conclusion that, as a result of a judgment by confession against the primary tortfeasors, there was issue preclusion concerning the extent of the estate's economic loss. Because we conclude that the administrator's acceptance of an offer to confess judgment by the primary tortfeasors did not constitute an adjudication of the extent of the loss sustained, we reverse the grant of summary judgment and remand the case for further proceedings.

In February 1991 Bobbie J. Hoth was a passenger in a vehicle owned and operated by Donna McKeeth. That vehicle was struck by a vehicle operated by Mary Jo Sexton and owned by Craig Sexton. Hoth died as a result of injuries sustained in that accident. His administrator commenced a wrongful death action against the Sextons, and in March 1996 she accepted an offer to confess judgment made by the Sextons for the sum of $350,000. The liability limits of the Sextons' liability insurance was $650,000. Prior to the acceptance of the offer to confess judgment, defendant USF & G informed the administrator that it would not consent to a settlement in accordance with the consent-to-settle clause in its policy. Iowa Mutual had no consent-to-settle clause in its policy.

After obtaining the $350,000 from the Sextons' liability insurer, the administrator filed separate actions seeking recoupment of additional economic loss from decedent's wrongful death (over and above $650,000) from the decedent's underinsured motorist coverage written by USF & G and Iowa Mutual. Iowa Mutual moved for summary judgment on the basis that the amount of the estate's damages were conclusively established by the judgment obtained against the tortfeasors by confession. USF & G also moved for summary judgment on that ground and for the additional reason that the administrator had violated the consent-to-settle clause in its policy. The district court granted the motion of both insurers for summary judgment on issue preclusion grounds. The administrator challenges that ruling on appeal.

### I. *Whether the Judgment by Confession Gives Rise to Issue Preclusion.*

■ We first consider whether the judgment by confession may be considered to have conclusively established the amount of the estate's loss on the basis of issue preclusion. As appellant points out, comment e of Restatement (Second) Judgments section 27 (1982) provides as follows:

> In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [dealing with *issue* preclusion] does not apply with respect to any issue in a subsequent action.

(Emphasis added.) Appellees respond that this is not the law of Iowa and rely on three decisions of this court to establish that proposition.

In *State ex rel. Casas v. Fellmer,* 521 N.W.2d 738 (Iowa 1994), this court dealt with the effect of a prior consent judgment in a paternity action. That judgment had declared that Fellmer was not the father of Casas's child. In the case that came before this court, the state, acting on behalf of Casas, sought to recover child support from Fellmer. We held that this was precluded by the judgment in a paternity action. Although we discuss the doctrine of issue preclusion in *Fellmer,* the dispositive principle governing the decision was one of claim preclusion.

The status of Fellmer as the father of the child was the claim made in the earlier action. Under claim preclusion law, consent judgments are binding on the parties thereto with respect to the subject of the judgment consented to. They are also binding on parties claiming through and on behalf of the prior litigant, as was the state in the *Fellmer* case.

In *Fournier v. Illinois Casualty Co.,* 391 N.W.2d 258 (Iowa 1986), we approved the following rule from Restatement (Second) Judgments concerning the dimension of a claim:

When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger and bar, ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Fournier*, 391 N.W.2d at 260 (quoting Restatement (Second) Judgments § 24 (1982)). The attempt to recover child support in the subsequent litigation in *Fellmer* was part of a series of connected transactions linked to the initial paternity determination. Under the doctrine of claim preclusion, as opposed to issue preclusion, a consent judgment in the paternity action was binding on Casas and the state, which was claiming through Casas. In the present case, the administrator is not claiming through the Sextons with respect to the sums sought from appellees. The claim is based on a contractual obligation of the appellees running directly to the administrator's decedent.

Another case that appellees contend supports the district court's ruling is *City of Chariton v. J.C. Blunk Construction Co.*, 253 Iowa 805, 112 N.W.2d 829 (1962). In that case a bonding attorney had suggested to the city officials that the expenses of contracting for a particular public improvement might not qualify for financing through general obligation bonds. Based on this advice, the city and its contractor became parties to a "friendly" lawsuit in which, after the work was performed, the contractor was granted a judgment against the city for an agreed amount. The payment of the judgment was financed through the issuance of municipal judgment bonds.

Later, the city sought to recover some of the contract payments on the theory that the workmanship was defective. This court held that under principles of claim preclusion the adequacy of the performance had been determined by the consent judgment. *City of Chariton*, 253 Iowa at 813, 112 N.W.2d at 833. This decision does not aid the appellees who, as nonprivies to the judgment by confession against the Sextons, must rely on issue preclusion principles rather than claim

preclusion principles. *See Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393 (Iowa 1998); *Riley v. Maloney*, 499 N.W.2d 18, 20 (Iowa 1993).

Another case relied on by the appellees is actually not an issue preclusion decision. The decision in *Hughes v. Burlington Northern Railroad*, 545 N.W.2d 318 (Iowa 1996), had to do with whether the stated amount in a judgment by confession established the total amount owed, or whether the plaintiff was entitled to have statutory prejudgment interest added to the judgment. We interpreted the judgment as including all amounts owed as of the date it was entered and thus subject to only postjudgment interest. The effect given to the judgment in *Hughes* was between the parties thereto in the same case in which it was entered and thus no principles of res judicata were involved.

Based on the conclusions reached in the prior discussion, we are convinced that, although the judgment by confession is binding between the parties and their privies under principles of claim preclusion, it does not avail USF & G or Iowa Mutual of a viable claim of issue preclusion in the present litigation. An essential element of issue preclusion is absent, *i.e.*, the requirement that the issue actually be litigated in the prior litigation. *See Penn*, 577 N.W.2d at 398; *Brown v. Kassouf*, 558 N.W.2d 161, 163 (Iowa 1997); *Hunter v. City of Des Moines*, 300 N.W.2d 121, 126 (Iowa 1981).

## II. *The Effect of the Consent–to–Settle Clause in the USF & G Policy.*

In seeking to save the judgment in its favor should the claim of issue preclusion fail, USF & G relies on the clause in its policy requiring its consent to any settlement with a tortfeasor. We held in *Kapadia v. Preferred Risk Mutual Insurance Co.*, 418 N.W.2d 848 (Iowa 1988), that such clauses are not contrary to the provisions of Iowa Code chapter 516A and are not against public policy. We cautioned, however, that such clauses may only be invoked if prejudice to the insurer can be demonstrated. *Kapadia*, 418 N.W.2d at 852. The theory of prejudice relied on in both the *Kapadia* case and the present case is that the insured's action cut off the insur-

er's subrogation rights against the tortfeasors. We agree with USF & G that in this regard the acceptance of the offer to confess judgment was the equivalent of a settlement for purposes of its policy clause.

Since our decision in *Kapadia*, we have decided the case of *In re Estate of Rucker*, 442 N.W.2d 113 (Iowa 1989). That case did not involve a consent-to-settle clause, but rather dealt with a policy requirement that the insured must first exhaust the policy limits of the tortfeasor's liability policy before resort may be had to that party's own underinsured motorist coverage. We held that this requirement was against public policy.

■ We concluded in *Rucker* that the unexhausted portion of the tortfeasor's liability policy is only a *pro tanto* credit to be applied against the total amount of loss established against the underinsured motorist insurer rather than a complete defense. We think that a similar result should prevail as to an underinsured motorist insurer's claim of prejudice from the insured's release of a potential subrogation claim. The insurer must establish not only that the claim has been released but also that it was collectible and establish within a reasonable approximation the dollar amount that might be collected.

■ In seeking to obtain summary judgment based on its consent-to-settle clause, USF & G relied on deposition testimony and other discovery revealing the extent of the Sextons' nonexempt personal assets. The fact that these assets exist does not establish USF & G's right to summary judgment. A factual issue remains as to the amount that could be realized from these assets toward the satisfaction of a subrogation judgment USF & G might obtain had the administrator not released the insurer's subrogation rights. That is the amount that, along with the $300,000 unexhausted limit of the Sextons' insurance, should be applied as a *pro tanto* reduction of USF & G's liability for the administrator's damages above $350,000.

We are also convinced that the determination of what the insurer might recover from the tortfeasor on a subrogation claim must be made as reasonably close as possible to the time the insurer's subrogation interest would have arisen if not released by the insured. Evidence obtained at the discovery stage of the present litigation may be stale for purposes of resolving that issue. For all of these reasons, we conclude that summary judgment was improperly granted as to both appellees. The judgment of the district court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**