# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0021
Filed April 1, 2026

————————————

**Boyle Built Enterprises, LLC,**
Plaintiff–Appellee,

v.

**Mark Benson,**
Defendant–Appellant.

————————————

Appeal from the Iowa District Court for Clinton County,
The Honorable Clinton R. Boddicker, Judge.

————————————

**AFFIRMED**

————————————

Bryan J. Goldsmith (argued) and Carly M. Schomaker of Gaumer, Emanuel
& Goldsmith, P.C., Ottumwa, attorneys for appellant.

Kevin J. Caster (argued) and Boanne R.M. Wassink of Shuttleworth &
Ingersoll, PLC, Cedar Rapids, attorneys for appellee.

————————————

Heard at oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

1

**SCHUMACHER, Judge.**

Mark Benson appeals the district court's determination that (1) Benson converted a 2000 Kenworth grapple truck ("Kenworth") from Boyle Built Enterprises, LLC, in contravention of a previous contempt order; (2) Boyle incurred lost profit damages of $1,000,000 plus interest; (3) Boyle did not fail to mitigate its damages; and (4) the district court erred in the imposition of interest on the judgment beginning on September 11, 2019. Upon our review, we affirm the district court.

## I. Background Facts & Proceedings

These parties and the difficulties arising from an asset purchase and consulting agreement appear before this court for a second time. On September 11, 2019, the Van Buren County district court entered judgment against Benson in favor of Boyle for money damages and specific performance arising from a breach-of-contract claim. The judgment ordered Boyle to pay Benson $57,624 and ordered Benson to transfer several vehicles with clear title to Boyle. The judgment also ordered Benson to surrender the Kenworth with clear title to Boyle within seven days of the ruling. The parties both appealed the judgment but did not request review of the portion of the ruling that required Benson to surrender the Kenworth. Our court affirmed the district court but modified the damages calculation in Benson's favor. *See Benson v. Boyle Built Enters., LLC*, No. 19-2006, 2021 WL 5918416, at *12 (Iowa Ct. App. Dec. 15, 2021).

A year and a half after entering judgment, the district court held Benson in contempt, finding that Benson had willfully and intentionally defied the order by failing to surrender the Kenworth. Despite the contempt order, Benson did not surrender physical possession of the Kenworth with

2

clear title.[1] While Benson did communicate several times with an intention to surrender physical possession of the Kenworth, he was initially unable to obtain clear title because he could not get a bank's lien on the truck released. Benson never offered to deliver the Kenworth, instead requesting that Boyle pick it up from Benson. By the time Benson obtained clear title, Boyle had restructured its business to function absent the Kenworth.

Boyle then initiated the underlying action subject to this appeal in district court, alleging Benson converted the Kenworth through refusal to surrender it as ordered. At trial in January 2024, Andrew Boyle, an owner of Boyle, and Benson were the only witnesses. Andrew testified that his lack of possession of the Kenworth caused his business to incur lost profit damages from missed work that could have been completed with the Kenworth. Andrew also claimed that Boyle lost work from its inability to use the Kenworth as collateral for bonds due to not possessing clear title.

The district court ruled in favor of Boyle, finding that Benson had converted the Kenworth. The court found that "Benson's testimony lacked credibility." On the issue of damages, the district court awarded Boyle $1,000,000 plus interest from September 11, 2019, based on calculation of lost profits.[2] And the court rejected Benson's argument that Boyle failed to mitigate damages stemming from loss of use of the Kenworth. Benson

---

[1] The court found Benson in contempt and sentenced him to thirty days in jail, with an opportunity to purge the contempt "by completing all necessary acts to surrender possession of the Kenworth truck and clear title thereto to Boyle on or before 9:00 a.m. on April 23, 2020." Benson did not purge the contempt and served the jail term.

[2] The court also awarded $100,000 for the value of the Kenworth, for a total judgment amount of $1,100,000.00. On appeal, Benson does not challenge the value of the Kenworth.

appeals, asserting the court erred in its conversion, lost profits, mitigation, and date-of-interest determinations.

## II.    Analysis

### (A)    Whether Benson Converted the Kenworth

Benson asserts the district court erred in determining he converted the Kenworth. He points to his several attempts to surrender physical possession of the Kenworth to Boyle via communications through his attorneys, which Boyle repeatedly refused. Benson argues the district court erred by combining the issue of physical possession of the Kenworth with the issue of title transfer. He also asserts the district court "created and imposed an imaginary duty . . . that he was required to deliver the vehicle to Boyle."

We review conversion claims for correction of errors at law. *Lewis v. Jaeger*, 818 N.W.2d 165, 175–76 (Iowa 2012).

To succeed on a conversion claim, Boyle "must establish (1) that [Boyle's] ownership or other possessory right in certain property exceeded [Benson's] rights in the property, (2) that . . . [Benson] exercised 'dominion or control' over the property inconsistent with his possessory right in it, and (3) that [Boyle] suffered damages as a result." *Larew v. Hope L. Firm, P.L.C.*, 977 N.W.2d 47, 60 (Iowa 2022). Conversion is defined as "the wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Id.* at 61 (citation omitted). Boyle "must establish a possessory interest in the property." *Id.* (emphasis omitted).

Benson does not appear to challenge that Boyle established the first element of conversion, as Benson was ordered in the first underlying case and contempt hearing to surrender the Kenworth with clear title to Boyle,

showing Boyle's possessory right in the Kenworth exceeded Benson's right. *See id*. at 60.

Benson challenges Boyle's proof of the second element, arguing that he tendered the Kenworth several times to Boyle, beginning in 2020, around six months after the September 11, 2019, order requiring surrender within seven days. There are issues with Benson's assertion. First, two of the communications, contrary to the September 11, 2019, order, were conditioned on Boyle performing extra duties to receive possession of the Kenworth. Those conditions included that Boyle "agree that the appellate-waiver doctrine does not apply to [surrendering the Kenworth]," and that "Boyle has it insured when it is exchanged." Second, these purported tenders of the Kenworth failed to include information about the location of the truck or how Boyle should obtain possession. Third, the communications began around six months after Benson was ordered to relinquish possession within a seven-day deadline. Lastly, these initial offers to surrender the Kenworth only related to physical possession, not clear title, as per the previous court order.

These communications from Benson to Boyle began after Boyle initiated contempt proceedings. It was not until 2022, well after the contempt ruling, that Benson alerted Boyle that he was ready to transfer title to the truck. At that point, Boyle had altered his business strategies so that he no longer needed the Kenworth and refused to take possession of it.

Boyle asserts whether he proved the second element of conversion, that Benson "exercised dominion and control over the property inconsistent with [Boyle's] possessory right in it," was previously decided, implicating issue preclusion. To succeed in establishing issue preclusion, the following must be true:

(1) The issue in the present case must be identical [to an issue in a previous proceeding], (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment.

*Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 104 (Iowa 2011). And because Boyle is invoking issue preclusion offensively, we must consider two additional elements: "(1) whether the opposing party in the earlier action was afforded a full and fair opportunity to litigate the issues . . . , and (2) whether any other circumstances are present that would justify granting the party resisting issue preclusion occasion to relitigate the issues." *Id.*

The first element of issue preclusion is satisfied here, as the 2021 contempt hearing dealt with whether Benson exercised control of the Kenworth inconsistent with Boyle's possessory rights. *See id.* The second element is also satisfied, as that issue and Benson's defenses were raised and litigated in the contempt proceeding. As with the current conversion action, whether Benson violated Boyle's possessory rights was answered in the contempt proceeding with the district court finding the September 11, 2019, order was "willfully and intentionally violated." *See id.* The third and fourth elements were fulfilled as Benson's failure to surrender the Kenworth was essential, material, and relevant to the contempt judgment. *See id.* The last two elements for offensive issue preclusion were also satisfied because Benson had a "full and fair opportunity to litigate the issue[]" and there are no other circumstances present that justify relitigating the issue. *See id.* Accordingly, relitigating the second element of conversion is barred by the issue preclusion doctrine. *See id.*

Boyle suffered damages from the conversion of the Kenworth. *See Larew*, 977 N.W.2d at 60. Because the other elements of conversion are

satisfied, we find the district court did not err in determining that Benson wrongfully converted the Kenworth after the September 11, 2019, order.

**(B)  Whether the District Court's Determination of Boyle's Damages was in Error**

Benson asserts that the district court's finding that Boyle suffered $1,000,000 in lost profits due to its inability to use the Kenworth was in error because the damage determination was "purely speculative." Benson also argues that claim or issue preclusion should have barred the court from referencing lost profits from a previously contracted job on the Omaha Track, as that issue was litigated in the first action. *See generally Benson*, 2021 WL 5918416, at *9 n.9.

We review challenges to "whether damages were proven . . . for correction of errors at law." *PSFS 3 Corp. v. Michael P. Seidman, D.D.S., P.C.*, 962 N.W.2d 810, 837 (Iowa 2021).

"There is a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages." *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 309 (Iowa 1998). When the evidence supporting damages is "speculative and [it is] uncertain whether damages have been sustained, damages are denied." *Pavone v. Kirke*, 801 N.W.2d 477, 495 (Iowa 2011). But, "if the uncertainty merely lies in the amount of damages sustained, 'recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.'" *Id.* (citation omitted). So, speculation concerning the amount of damages is acceptable, but "overly speculative damages cannot be recovered." *Id.*

At trial, Andrew testified about two calculations for damages. The first concerned Boyle's bonding and borrowing capacity and the second

7

concerned lost annual profit based on loss of use. At the underlying proceeding, Andrew testified that if he had possession of the Kenworth with clear title within seven days of the September 11, 2019, order then Boyle would have generated revenue by using the truck. In his testimony, Andrew was specific regarding the amount of lost profit that Boyle sustained by being unable to use the Kenworth. Some of the specifics included the profits generated from using similar equipment, the net profit from previously contracted jobs as reference for lost opportunities, and the methodology for estimating the lost profits, which was a formula that Benson taught Andrew to use. When describing the estimation for lost profits, Andrew used specific numbers based on that formula and previously contracted jobs. Andrew did not produce any paperwork reflecting contracts that the company lost due to its inability to use the Kenworth.

We agree with the district court that Andrew's "calculation based on lost profit [was] more definite and supported by the evidence." Andrew's testimony provided a "reasonable basis from which the amount [of lost profits] can be inferred or approximated." *See id.* (citation omitted). Andrew's references to comparable jobs that were lost along with explanation of the formula his company employed to determine lost profits is evidence beyond mere speculation. *See id.*

Benson also argues that the district court's reliance on lost profits from the Omaha Track job and exhibits showing other lost profits that were issues in the breach-of-contract action where the court denied damages were improper. Benson asserts that because lost profit damages were denied at an earlier proceeding, issue and claim preclusion should have barred the court from considering Omaha Track and other exhibits demonstrating previous lost profits in its evaluation.

The party asserting claim preclusion must show: "(1) 'the parties in the first and second action were the same'; (2) 'the claim in the second suit could have been fully and fairly adjudicated in the prior case'; and (3) 'there was a final judgment on the merits in the first action.'" *Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006) (citation omitted). The elements of issue preclusion are outlined above.

Neither claim preclusion nor issue preclusion apply here. The initial breach-of-contract proceedings involved lost profits from before September 11, 2019, while the underlying action of this appeal concerns events occurring after that date. Because the underlying proceeding here litigated lost profits occurring after September 11, 2019, based on a conversion action, it is impossible that this evidence was "material and relevant to the disposition of the prior [breach-of-contract] case," or that "the claim in the second suit could have been fully and fairly adjudicated in the prior case." *See id.*; *see also Soults Farms, Inc.*, 797 N.W.2d at 104; *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 861 (Iowa 1990) (finding that a bad-faith claim brought against an insurance company after prior litigation awarding the plaintiff damages was not barred by res judicata, as the "bad-faith claim might well be based on events subsequent to the filing of the suit on a policy and therefore could not be based on the 'same' facts"); *but see Villareal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 721–22 (Iowa 2016) (distinguishing from *Leuchtenmacher* in a similar bad-faith analysis in determining whether claim or issue preclusion apply and stating, "*Leuchtenmacher* does indicate that a bad-faith claim based on events *subsequent* to the filing of a breach-of-contract claim would not be precluded by a judgment in the breach-of-contract case. Yet here, the . . . case was based on events that occurred before . . . the breach-of-contract case was filed" (emphasis added)).

9

Because the first case alleged breach of contract and the case here alleged conversion, we conclude the district court was allowed to reference the Omaha Track information. *See Hoth v. Iowa Mut. Ins. Co.*, 577 N.W.2d 390, 392 (Iowa 1998). The court was also allowed to consider related exhibits showing lost profit from August 2018 to February 2019 to inform the amount of lost profit accruing from September 11, 2019. *See id.* (finding a subsequent claim for a contract obligation was not litigated through a previous offer to confess judgment, so res judicata did not apply and underlying facts could support both claims); *see also Clark v. State*, 955 N.W.2d 459, 471 (Iowa 2021) (holding "successful ineffective-assistance-of-counsel claims" cannot be used to "preclusively establish . . . elements of [a] malpractice claim," but reiterating "our holding does not diminish [the plaintiff's] ability to rely on the same evidence he successfully used before"). The record demonstrates that Boyle introduced this evidence to estimate what a typical job's earnings could be, which informed the determination of lost profit after September 11, 2019. We find no error in the district court's damage calculation.

### (C)   Whether Boyle Failed to Mitigate Damages

Benson asserts the district court erred in rejecting his argument that Boyle failed to mitigate lost-profit damages. This assertion is based on Boyle refusing to execute, levy, or retrieve the Kenworth after Benson tendered it and not buying or renting a replacement truck. Boyle argues that because Benson converted the Kenworth, it had no duty to mitigate damages.

The duty to mitigate damages applies generally to conversion actions. *Welke v. City of Davenport*, 309 N.W.2d 450, 453 (Iowa 1981). "Mitigation of damages is a special defense which must be pled and proven by the defendant." *F.S. Credit Corp. v. Shear Elevator, Inc.*, 377 N.W.2d 277, 233 (Iowa 1985). Once conversion has accrued, the party who wrongfully

possesses the property cannot claim failure to mitigate because of the other party's refusal to take back the property. *Welke*, 309 N.W.2d at 453.

That is what occurred here. Benson, although purporting to tender physical possession of the Kenworth, was unable or refused to tender clear title in accordance with the district court's order. By the time that Benson obtained clear title and offered it to Boyle, the conversion had accrued because of Benson's failure to surrender the truck for over two years. Boyle's refusal of the Kenworth therefore did not violate its duty to mitigate damages. *See id.* And it is dubious to expect Boyle to mitigate damages after the district court found in 2021 "that Benson has willfully and intentionally disobeyed the court's September 11, 2019, ruling and order" to surrender the truck. We find the district court did not err in rejecting Benson's claim that Boyle failed to mitigate damages.

**(D) Whether the District Court's Imposition of Interest Beginning September 11, 2019, was in Error**

Benson asserts that the district court erred in ordering that interest accrued since September 11, 2019, shall be applied to the lost-profit damage judgment. Benson maintains that he preserved this alleged error through his Iowa Rule of Civil Procedure 1.904 motion to enlarge, amend, or reconsider, and by filing a notice of appeal. Boyle argues that this challenge to the interest judgment was not preserved for our review. We agree with Boyle.

When a party asserts a new position on a contested issue for the first time on appeal, that issue is not preserved for our review. *See CMT Highway, LLC v. Logan Contractors Supply, Inc.*, No. 24-1158, 2025 WL 1705004, at *8 (Iowa Ct. App. June 18, 2025). "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not

first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). "It is a fundamental doctrine of appellate review that issues must ordinarily be both *raised* and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (emphasis added).

Benson's rule 1.904 motion failed to address the interest calculation. The issue was also not addressed in his post-trial brief nor at any other district court proceeding prior to the judgment order. And Benson's assertion that he preserved the issue by filing a notice of appeal is not correct as "[f]iling a notice of appeal does not preserve an issue for appeal, and citing to the notice does not satisfy this requirement." Iowa R. App. P. 6.903(2)(a)(8)(1).

Because the interest calculation issue was not preserved, "we decline to address the merits of this issue and leave the . . . court's decision intact." *See CMT Highways, LLC*, 2025 WL 1705004, at *8 (holding that if a party contests interest calculations from judgment, they must include the error in a rule 1.904(2) motion otherwise they "fail[] to preserve error on this issue").

### III.    Conclusion

For the reasons stated above, we affirm.

**AFFIRMED.**